28 C.C.P.A. (Patents)

## MISHAWAKA RUBBER & WOOLEN MFG. CO. v. H. C. GODMAN CO.

### Patent Appeal No. 4481.

Court of Customs and Patent Appeals.

May 5, 1941.

Eugene M. Giles, of Chicago, Ill. (Charles R. Allen, of Washington, D. C., of counsel), for appellant.

Warren H. F. Schmieding, of Columbus, Ohio (Watts T. Estabrook, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents in a proceeding which arose in the United States Patent Office wherein appellant opposed an application made by appellee for the registration of a trade-mark for boots and shoes. The decision of the commissioner affirmed the decision of the Examiner of Interferences dismissing the notice of opposition filed by appellant and adjudging applicant "entitled to the registration for which it has made application."

The respective marks were described by the Examiner of Interferences as follows:

"The mark shown in the application here involved comprises the notation 'Bel-View' prominently displayed within a pair of approximately circular lines in association with the picture of a nurse's head and the disclaimed words 'Nurse Oxford,' all upon a red panel. This panel, which is generally circular in form, has irregular edges, its outline somewhat resembling that of a wax impression seal.

"The mark here relied upon by the opposer, as described in Registration No. 36,-471 pleaded by the latter, is the 'representation of a circular figure or ball colored red.' This mark is applied in various sizes to opposer's goods and containers therefor in the manner shown, for example, by Exhibits 5 to 8."

It should be understood that appellant's trade-mark as registered consists solely of a disk or ball of a reddish color. In use it sometimes is accompanied by the words "Ball" and "Band," also by the notation "Ball-Band." When so accompanied, however, the words, which constitute no part of the registered mark, are not imposed upon

the disk. Exhibits on file show that in some cases the word "Ball" appears to the left of the disk and the word "Band" to the right, while in other instances "Ball-Band" appears in arcuate arrangement above the disk.

Both parties sell boots and shoes to which the respective marks are applied. Their goods are not identical in type, but it is not questioned that they are of the same descriptive properties, nor is it questioned that appellant began the use of, and registered, its mark many years prior to any use by appellee of its mark. The question to be determined, therefore, is, as stated by the commissioner, "whether applicant's mark so nearly resembles the mark of opposer as to be likely to confuse the public or to deceive purchasers."

Both tribunals below were in agreement not only as to the conclusion but in the reasoning upon which that conclusion was based. The commissioner expressed the common view of both tribunals in the following terms:

"Their only resemblance is that in background applicant's mark is the same color, and roughly the same shape, as opposer's. This background, however, is obscured by other matter to such an extent that it becomes relatively insignificant. Regardless of testimony to the contrary, it is my opinion that applicant's mark is dominated by the nurse's head and the notation 'Bel-View;' and I think those are the features that would impress the mind of the average purchaser.

"Obviously there could be no resemblance between the marks except in appearance; and as they differ sufficiently in that respect to insure against any reasonable likelihood of confusion, the opposition was properly dismissed."

In appealing to this court appellant presented a large number of reasons of appeal, many of them being conventional in character and requiring no specific attention.

The depositions of two persons connected with appellee's company were taken on its behalf and certain stipulated evidence was introduced on behalf of appellant.

It will be observed that in that part of his decision quoted, supra, the commissioner said, "Regardless of testimony to the contrary, it is my opinion that applicant's mark is dominated by the nurse's head and the notation 'Bel-View;' and I think those are the features that would impress the mind of the average purchaser."

Several of the reasons of appeal relate to this holding and constitute the subject matter most strongly emphasized in appellant's brief before us. It is alleged that the commissioner erred "In relying on an inspection of the marks instead of the probable recollection thereof by ordinary purchasers"; "In ignoring and failing to give proper weight to the testimony"; "In disregarding the testimony that the red color is a distinctive feature of applicant's mark"; "In disregarding the testimony that the nurse's head is not a distinctive feature," and "In holding contrary to the proofs that the nurse's head and the notation 'Bel-View' are the features of the applicant's mark that would impress the mind of the average purchaser."

The meaning of appellant's reason of appeal respecting the commissioner's holding based on "inspection of the marks instead of the probable recollection thereof by ordinary purchasers" is not clear to us. Probable recollection by ordinary purchasers is, at most, highly speculative and no testimony was offered to indicate what such recollection was or might be as to the marks here involved. That it is proper for the commissioner and the courts to inspect contesting marks and make visual comparison of them as an aid in determining the likelihood of confusion is a rule so well established that no citation of authority need be stated in its support. In the case of design marks in particular such visual comparison is not only proper but necessary.

The testimony alleged to have been disregarded by the commissioner seems to have been certain statements made by appellee's witnesses. We have examined that testimony carefully and it seems to us to have been misinterpreted by appellant and that appellant also may have misunderstood the precise meaning which the commissioner intended to convey by the language quoted from his decision.

Appellee's witness, McGinty, testified that prior to the adoption of the mark in controversy appellee used "a stamp consisting of a nurse's head in square outline," and stated that the change was made "To differentiate our product from competition and principally foreign competition." The brief on behalf of appellant quoted from an answer made on cross-examination by appel-

lee's witness Crompton (who stated that he was responsible for the adoption of the involved mark). "The nurse's head on Exhibit 'B' [a shoe stamped with prior mark] gives no indication whatsoever as to the origin of the product," but fails to quote the remainder of the answer which reads "while the name Belview on Exhibit 'A' [a shoe bearing the involved mark] has become known as the product of the H. C. Godman Company."

In answer to a further cross-interrogatory Crompton said: "Exhibit 'A' by all means presents a much better reproduction of the nurse because of the background or border that surrounds the nurse's head."

During the cross-examination of Crompton, counsel for appellant introduced in evidence as its Exhibit 9, a shoe bearing a mark whose outlines are somewhat similar to those of the involved mark but having the notation "Schiffs" instead of "Bel-View," and the witness was asked a number of questions concerning that mark. We are unable to discern the relevancy of that testimony here, but, assuming its relevancy, we find nothing in it which seems to support the contention that the nurse's head was regarded by appellee as not being a distinctive feature of the composite mark at issue.

■ We do not find that the commissioner ignored any testimony given respecting the red color being a distinctive feature, nor are we able to find any testimony which fairly construed can properly be said to be to the effect that the nurse's head is not a distinctive feature. The evidence when properly analyzed seems to us to be to the contrary, but whatever may be the situation in that regard the nurse's head does appear as a part of the mark not disclaimed, and the notation "Bel-View" also appears as has been described. These superimposed upon the background, although such background is red, create a mark which it seems to us is so distinctly different from the plain design disk of appellee that no confusion is likely to result.

■ Incidentally it may be said that appellant seemingly seeks to have us dissect the mark of appellee, and consider it piecemeal. Clearly the mark must be considered as an entirety. Estate of P. D. Beckwith, Inc. v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705; United States Gypsum Co. v. American Gypsum Co., 109 F.2d 659, 27 C.C.P.A., Patents, 907.

The following from the brief on behalf of appellee is pertinent:

"When dealing with a combination trademark, i. e., trade-marks including both designs or symbols and words, differences between the marks are accentuated by the use of the word portions of the marks of the respective parties. A. J. Krank Co. v. Delaware Cosmetics, Inc., [D.C.] 9 F.Supp. 110, 23 U.S.P.Q. 334.

"Whether mere color can constitute a valid trade-mark may admit of doubt. Doubtless it may, if it be impressed in a particular design, as a circle, square, triangle, a cross, or a star. But the authorities do not go farther than this. A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 171 [26 S.Ct. 425, 50 L.Ed. 710].

"In design trade-marks, consideration of likelihood of confusion must be confined to a comparison of the physical appearance of the marks. United States Gypsum Co. v. American Gypsum Co., supra; Corning Glass Works v. Pasmantier et al. [D.C.] 30 F.Supp. 477, 44 U.S.P.Q. 205; Estate of P. D. Beckwith, Inc. v. Commissioner of Patents, supra; E. C. DeWitt & Co., Inc. v. Brewer & Co., Inc., 31 U.S.P.Q. 163."

Another contention of appellant is that the commissioner erred "In disregarding the appropriation by applicant of opposer's entire mark and failing to hold that applicant, because of such appropriation, is not entitled to registration."

We think this contention is erroneous as to the alleged fact recited therein. As we view it, appellee did not appropriate appellant's design and merely add to it. It formed a design of its own differing in detail from that of appellant and made additions of words to its own design. The authorities cited by appellant upon this phase of the case are not applicable here and need not be discussed.

Appellant contends further that any doubt which exists should be resolved against appellee as a newcomer, saying, inter alia, in the concluding portion of its (appellant's) brief, "Placing the stamp of approval on marks such as applicant seeks to register would undoubtedly establish a precedent encouraging others to appropriate opposer's mark in like manner." We deem it sufficient to say that in this case we do not think there is room for any reasonable doubt. Any other cases that may arise will

have to be decided upon the facts which they present.

 In appellant's brief before us it is sought to raise the question as to "Bel-View" being a geographical term. This does not appear to have been suggested below and it is not referred to in the reasons of appeal. Under such circumstances, we must decline to consider it.

We think the tribunals of the Patent Office reached the correct conclusion and the decision of the commissioner is affirmed.

Affirmed.