**MISHAWAKA RUBBER & WOOLEN MFG. CO. v. PANTHER–PANCO RUBBER CO., Inc.**

**PANTHER–PANCO RUBBER CO., Inc., v. MISHAWAKA RUBBER & WOOLEN MFG. CO.**

Nos. 4063, 4064.

Circuit Court of Appeals, First Circuit.

Feb. 7, 1946.

Rehearing Denied March 20, 1946.

Richard F. Walker, of Boston, Mass. (Eugene M. Giles, of Chicago, Ill., and Robert J. Keating and Roberts, Cushman & Grover, all of Boston, Mass., of counsel), for Mishawaka Rubber & Woolen Manufacturing Company.

Melvin R. Jenney, of Boston, Mass. (Richard R. Hildreth, of Boston, Mass., of counsel), for Panther-Panco Rubber Co., Inc.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

The complaint in this case charges defendant with infringement of a registered trade-mark and with unfair competition. From an interlocutory decree granting in part the relief sought, both parties have appealed.

Plaintiff, Mishawaka Rubber & Woolen Manufacturing Company, is an Indiana corporation, incorporated in 1874, an old-established manufacturer of various kinds of heavy duty footwear bearing rubber soles and heels. These products it sells to shoe stores, department stores, and other shoe retailers. It produces soles and heels only for use on its own footwear and not for sale as separate soles or heels to shoe manufacturers or to the shoe repair trade.

On May 28, 1901, plaintiff obtained from the Patent Office a certificate of Trade-Mark Registration, No. 36,471 (renewed in 1931), for a mark which it had adopted several years earlier. In the application, the mark is described as an "arbitrarily-selected representation of a circular figure. or ball colored red," customarily affixed to various goods, including rubber boots and shoes, and boots formed partly of rubber and partly of wool. The mark has usually been affixed to rubber soles and heels either as a circular wafer vulcanized upon the tread or as a red circular plug embedded in the tread, the size of the mark varying from three-eighths to five-eighths of an inch in diameter. Throughout the years since the adoption of its trade-mark, plaintiff has spent millions of dollars in national advertising, in which its red circular figure has been continually and conspicuously displayed, together with the slogan "LOOK FOR THE RED BALL." As a result, this characteristic mark upon the tread face of plaintiff's shoes has undoubtedly achieved a considerable trade-mark significance, despite the fact that it might be described as intrinsically a "weak" mark. Plaintiff has been alert and zealous to protect it from infringement, perhaps at times under an exaggerated notion of the scope of the mark reserved to its exclusive user. See Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 1941, 119 F.2d 316, 322; reversed (on an accounting point) 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Mishawaka Rubber & Woolen Mfg. Co. v. H. C. Godman Co., 1941, 119 F. 2d 425, 28 C.C.P.A., Patents, 1116.

In 1938, plaintiff obtained Trade-Mark Registration No. 356,086 for the same mark, as applied to "rubber heels and rubber soles."

These two registrations of plaintiff's. trade-mark were adjudged to be good and valid in law in the interlocutory decree of the court below. Defendant has not urged on appeal that such ruling was in error, though it has argued that such a commonplace mark is not entitled to broad protection.

Defendant Panther-Panco Rubber Co., Inc., is a Massachusetts corporation, incorporated about 1931 as a consolidation of two other Massachusetts corporations, Panther Rubber Manufacturing Company and Panco Rubber Company. It is a large and well-known manufacturer of rubber soles, taps and heels, sold through jobbers to the shoe repair trade, and to some extent to shoe manufacturers. It does not manufacture completed shoes and boots, and hence, as pointed out by the district court, is not in direct competition" with the plaintiff.

Defendant is the owner of three registered trade-marks: No. 162,105 for PANCO, applied to soles and taps, originally registered December 5, 1922, and renewed December 5, 1942; No. 162,104 for PANCORD, applied to rubber heels, originally registered December 5, 1922, and renewed December 5, 1942; and No. 318,516 for PANCO TRIPLEWEAR, applied to rubber heels, registered October 30, 1934.

As originally used, the name "Panco" was impressed in the rubber sole or tap without contrasting color. In 1932, defendant (or its predecessor) modified the display of its mark by vulcanizing to the black rubber tread of the sole an oval-shaped piece of red rubber about two inches across, and embossing in the red oval the word "PANCO" in large capital letters below the word "GENUINE" and above the legend "TRADE-MARK REG."

This red oval mark defendant sought to register in the Patent Office. Plaintiff filed an opposition proceeding·based upon its prior red circular trade-mark. The Examiner of Interferences, and, on appeal, the Assistant Commissioner of Patents, refused registration to defendant's red oval mark on the ground of its confusing similarity to plaintiff's mark affixed to goods of the same descriptive properties. This was in 1935.

Notwithstanding the foregoing decision of the Patent Office, defendant continued thereafter to use the red oval mark. Plaintiff apparently did not discover this continued use until the summer of 1939. Some correspondence between the parties ensued. Defendant declined to abandon the use of the red oval. Complainant filed its complaint below on April 11, 1941.

The district court in the decree now under review dismissed the complaint in so far as it was based upon defendant's use of the red oval mark on its rubber soles, upon a finding that the buying public would not thereby "be confused in buying the defendant's product by way of thinking that the product which they are purchasing is the plaintiff's." A challenge of the correctness of this ruling is the main issue urged by plaintiff in its appeal. We think

that the district court committed no error in this respect.

■ It is conceded by plaintiff that the decision of the Patent Office in the opposition proceeding is not res judicata. John Morrell & Co. v. Doyle, 7 Cir., 1938, 97 F. 2d 232. While such decision may be entitled to weight, as the court below recognized, yet in the circumstances of this case we agree that it is not controlling.

■ It is of some significance that, notwithstanding defendant's long-continued use of the accused red oval mark, plaintiff produced no evidence of actual confusion in the minds of purchasers due to such use. See Patton Paint Co. v. Sunset Paint Co., 1923, 53 App.D.C. 348, 290 F. 323, 326. In its brief, plaintiff acknowledges "that the accused infringements have so far inflicted little injury, the subject matter of recoverable damages, to Plaintiff. Defendant has maintained relatively good quality in its accused products, and its sales have been principally confined to the repair market where Plaintiff is inactive."

The first impression one gets in examining defendant's red oval mark is that the word "Panco" in large capital letters is the dominating feature, with the red oval serving merely as a background having the effect of making "Panco" stand out more distinctly. Plaintiff, however, earnestly maintains that this is not the impression that would be made upon the trade and the public; that to them the outstanding representation would be that of the red oval, or "football," a colorable imitation of plaintiff's red circle or ball trade-mark. In support of this view, plaintiff refers to testimony by defendant's own witnesses as to the reason which led defendant to adopt the red oval mark in 1932. This was the explanation given: After several years of experience with stamping defendant's trade-mark "Panco" on its soles without contrasting color, and after expensive advertising and sales promotion, the name "Panco" became a household word in various parts of the country, and "a good many people" were led to believe "that any black soling material was Panco, and they assumed that it was a type of soling material rather than a brand name." There resulted some confusion with competitive soles of inferior quality, to the damage of defendant's reputation. Accordingly, defendant adopted the red label, or oval-

shaped background, "in order to display our own name very prominently." This eliminated the confusion with competing soles which had previously been experienced.

■ Plaintiff reads this testimony as a confession out of defendant's own mouth that the name "Panco" had lost all trade-mark significance and that what the defendant really sought to do, from 1932 on, was to trade on the good will of plaintiff's well-established red ball mark. We think no such conclusion need be drawn from this testimony. The fact that "a good many people" had confused defendant's soles with those of competitors may have indicated that the name "Panco" was in danger of ultimately losing its trade-mark significance in the trade generally unless steps were taken to impress the name more sharply upon the public consciousness as the mark of defendant's product. The district court might well have believed that this was all the testimony amounted to.

■■ In its opinion, the district court [55 F.Supp. 308, 309], laid down this proposition: "The plaintiff's trade-mark has only two qualities—first, its geometrical design which is a circle, and, secondly, its color which is red. When two such common qualities are used protection cannot be extended to each. It is the combination only that can be protected by registration." We think this is an accurate enough statement as applied to the case at bar. Certainly, plaintiff's trade-mark registrations do not give it the exclusive right to the use of the color red; nor do they give it an exclusive right to the use of a circle. We do not understand the court to mean that, to be a colorable imitation under 15 U.S.C.A. § 96, the accused mark must be an exact duplication of the plaintiff's trade-mark. The basic test, of course, is the likelihood of confusion, which depends upon the facts of the particular case. Plaintiff is apprehensive that an adjudication that the red oval mark was free to defendant's use "would permit Defendant to reduce the size of its oval and thereby greatly increase the confusion of Defendant's mark with Plaintiff's." If defendant undertook to do this, we would have quite a different case, for a very small red oval figure might well be deceptively similar to the plaintiff's red circle mark, and such reduction in the size of the oval would at the same time minimize the em-

phasis on the name "Panco" which, as above appears, is the dominating feature of the accused mark as presently used.

In 1932 defendant also introduced a rubber heel with its trade-mark PANCO TRIPLEWEAR embossed in large letters in an irregular, elongated red field. A representation of this mark appears in the center of the heel shown in the colored picture reproduced in this opinion. In July, 1937, defendant discontinued using the color red; since then this mark has appeared in black upon a black background. This particular mark, whether in red or black, quite obviously has no deceptive similarity to plaintiff's red circle. The district court rightly held it was no infringement and rightly dismissed the complaint with respect thereto.

On the other hand, the district court in its interlocutory decree adjudged that defendant had infringed plaintiff's registered mark "by the use of a red circle or red circular background on its packaging and advertising"; and it ordered an accounting by the defendant of the profits that might have accrued to it from sales "of rubber heels, soles or taps bearing, or sold in packages or cartons bearing a red circular figure or background."

The only specific piece of evidence referred to by the district court in its findings of fact in support of this part of the decree is plaintiff's Exhibit 4. This is a carton in which defendant packages and sells to the shoe repair trade its rubber heels bearing the PANCO TRIPLEWEAR mark. A picture of the elaborate multi-colored design on these cartons is reproduced below:

The record contains impressive evidence, of what indeed is common knowledge, that the use in all fields of merchandising of a red background in the shape of a circle or other simple geometric figure is one of the commonest advertising devices for the vivid display of a slogan, or catchword, or name or arbitrary design selected as a trade-mark. By dint of extensive and persistent advertising, plaintiff has succeeded in giving to the red circle a secondary meaning as the trade-mark of its boots and shoes. But it is an inescapable weakness of plaintiff's mark that the general public will not always associate a red circle with plaintiff's product; it is too familiar with the every-day use of a red circle as a display background. Such association will only result where the red circle is so used as to convey the impression of being the trade-mark itself rather than serving merely as a background for the projection of some word or phrase or design.

In our opinion, Exhibit 4 would not give the impression, even to a casual buyer, let alone a professional buyer in the shoe repair trade, that the red circle is the distinguishing mark of defendant's product. Upon the contrary, the red circle appears to be merely the background for displaying a picture of the product within the carton, namely, a rubber heel bearing on its tread side defendant's PANCO TRIPLEWEAR trade-mark. We think the district court was in error in holding Exhibit 4 to be an infringement of plaintiff's registered mark.

With reference to the injunction against the use by defendant of a red circular figure or background on "advertising matter", the court below assumed, without discussion, that the display of plaintiff's registered mark in defendant's advertising would constitute an infringement under 15 U.S.C.A. § 96. We think that assumption is correct, though the precedents are not so clear as they might be. Some cases have held that, to come within the Trade-Mark Act, defendant's accused mark must in some way be impressed upon or affixed to the goods or the wrapper or container thereof. Postal Tel. Cable Co. v. Netter, C.C.E.D.Pa. 1900, 102 F. 691, 692; Diederich v. W. Schneider Wholesale Wine & Liquor Co., 8 Cir., 1912, 195 F. 35, L.R.A.1915B, 889; New York Mackintosh Co. v. Flam, D.C.N.Y.1912, 198 F. 571. We agree with Sanborn, J., dissenting, in the Diederich case, supra, 195 Fed. at pages 39-

41, that however much such holding may have been justified under the earlier versions of the Trade-Mark Act, the broader language of the present Act does not require any such limited view. 15 U.S.C.A. § 96 now reads, in part, as follows:

"Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several States, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof."

The use of a copy or colorable imitation of plaintiff's trade-mark in an advertisement of defendant's product might well amount to affixing said mark "to labels, signs, [or] prints," intended to be used "in connection with the sale of merchandise" within the meaning of the Act. See Jantzen Knitting Mills v. Spokane Knitting Mills, Inc., D.C.E.D., Wash.1930, 44 F.2d 656. Manifestly the essential wrong of trade-mark infringement, the appropriation of the good will of another's established mark, may be effectively accomplished by advertising matter associating that other's distinguishing mark with the product of defendant. See Handler and Pickett, "Trade-marks and Trade Names—An Analysis and Synthesis", 30 Col.L.Rev. 759, 762 seq.; American Law Institute, Restatement of Torts, § 727, Comment b.

The district court in its findings of fact makes no reference to particular advertising matter claimed to be an infringement. But the record contains two exhibits of advertisements by defendant in which a red circle is used. We do not think that either of these exhibits would support a finding of infringement:

Plaintiff's Exhibit 5 is a full-page advertisement inserted by defendant in the "Boot and Shoe Recorder" for December 21, 1935. For a background there is a solid red circle or disk seven inches in diameter. On the disk is displayed a picture of a high black shoe, side view and standing upright. Superimposed upon the shoe and extending somewhat beyond the upper right portion of the circumference of the red circle is a representation of the tread face of a black sole, seven inches long. The word "PANCO" appears in large letters in a black circle on the tread. The lower left portion of the circumference of the red circle is cut by a superimposed representation of a black rubber heel. The tread surface of the heel shows an elaborate embossed design, which need not be described beyond saying that it bears not the remotest resemblance to plaintiff's registered mark. The only writing shown on the heel is the word "PANCO." At the bottom of the advertisement in large letters is the legend "PANCO COMPOSITION SOLES & HEELS," with a statement that they have been in use for over twenty years by manufacturers who demand absolute assurance of high quality and long wear. It is evident from the layout as a whole that the red circle performs no more than the familiar function of serving as a background for the better display of pictures of the defendant's products. No intimation is conveyed that the red circle is the distinguishing mark of defendant's products; on the contrary, upon the representations of both the sole and the heel defendant's registered trade-mark "PANCO" is clearly displayed.[1]

Plaintiff's Exhibit 6 is a full-page advertisement inserted by defendant in the trade magazine "Creative Footwear" for April 1, 1941. The background of the page as a whole is black. Almost all the way across the center of the page is a strip

[1] Early in 1936 plaintiff wrote to defendant objecting to this use of a red circle in defendant's advertising. Defendant's attorney replied disclaiming infringement, but stating that to "avoid controversy" the company would endeavor to refrain from using a red disk in the future. The letter also stated: "Although it is entirely obvious that the use of which you complain is in no sense of the word intended to identify Panther products, and is for the sole purpose of presenting a pleasing background which will emphasize the products themselves, nevertheless our clients have advised us that they will endeavor to avoid any simulation of a red disk or ball either in advertising or on the products themselves."

about three inches high containing alternate gray·and white bars, with the conspicuous black legend thereon "BAR DESIGN." On the upper half of the page is a fanciful sketch of a ranch scene, with a cowboy riding a bucking horse, the picture being enclosed by a representation of a broad red ribbon bearing the legend "THE BRAND OF A SPORTS CHAMP." Superimposed across the gray and white strip and across the ranch scene is a representation of the tread face of a corrugated rubber sole bearing the name "PANCO" without contrasting color. At the lower right of the page is a red square-shaped shield bearing in large white letters "PANCO" over "RUBBER SOLES" in black capitals. At the very bottom of the page is "PANTHER-PANCO RUBBER CO., CHELSEA, MASS.," above which is the legend "SPORTING AMERICA knows its brand * * * it's the BAR DESIGN found only on those famous 18 iron PANCO SOLES." A little off center of the page and superimposed upon the gray and white strip just above the "B" in the legend "BAR DESIGN", is a red circle or dot about a quarter of an inch in diameter. It is a little hard to discover the function of this red spot, unless perhaps the advertising man thought it would serve to draw the eye to the central legend of the advertisement, namely, "BAR DESIGN." From an inspection of the advertisement as a whole, it would be difficult to derive the impression that the red dot constituted the distinguishing mark of the defendant's product here advertised; and the district court has made no such finding of fact. The predominant emphasis is upon the defendant's trade-mark "PANCO" and upon the legend "BAR DESIGN." Nor has the district court found that, by the display of this red dot, the defendant intended to engender a confusing association between plaintiff's products and its own. On the present record, such a finding would be difficult to sustain. The advertisement is in a trade magazine, addressed to professional buyers to whom both defendant and plaintiff are well and favorably known. Rather than to cause confusion of its products with those of plaintiff, it seems that defendant's long-continued effort has been to enhance the trade-mark significance of its own "PANCO" mark. Under the circumstances, Exhibit 6 does not sustain the district court's conclusion of law that defendant has infringed plaintiff's registered mark by the use of a red circle in its advertising.

There remains to consider that portion of plaintiff's complaint which charges unfair competition. The complaint alleges that on some of plaintiff's products it has applied its red circle mark to the center of a diamond-shaped outline, "said red spot of color being substantially framed by said diamond shaped outline. Said diamond shaped mark with the spot of red color therein has become widely known throughout the United States and elsewhere as being the distinctive mark or ensemble by which plaintiff's rubber heels and soles are identified, and plaintiff has the exclusive right to use such mark or ensemble." In a stipulation of facts it is recited that, continuously since 1898, plaintiff has "on many of its·products, used a diamond shaped configuration in addition to a red circular figure trade-mark, which diamond shaped configuration on some of its products was merely molded in an exposed rubber surface of the product in the form of a diamond shaped border which extended around the red circular figure trade-mark * * *, and on some of its products said diamond shaped configuration was a diamond shaped patch of rubber bearing plaintiff's red circular figure trade-mark and secured to an exposed surface of the product." Though on many of its products plaintiff has used its red circular trade-mark without any diamond-shaped configuration, a "large percentage" of its footwear bore in addition the said diamond-shaped configuration as above described. It is claimed that plaintiff's Exhibit 3 constitutes an infringement of plaintiff's "distinctive ensemble", or unregistered common law trade-mark, consisting of a red circle framed by a diamond-shaped outline.

Plaintiff's Exhibit 3 is a composition sole manufactured by defendant, bearing a large red diamond-shaped label, vulcanized on the tread. Embossed in red on the diamond is defendant's trade-mark "PANCORD" in script, and in small block letters the legend "CORD ON END." A witness for defendant testified that this sole, so marked, was usually sold to shoe manufacturers; and that the completed new shoe, with defendant's sole affixed by said manufacturers, went on the market with defendant's diamond mark displayed on the sole.

The district court ruled that, with respect to the claim of unfair competition,

the Massachusetts law governed; and that, under that law, "direct competition is necessary to support a charge of unfair competition," citing Hub Dress Mfg. Co. v. Rottenberg, 1921, 237 Mass. 281, 129 N.E. 442; Kaufman v. Kaufman, 1916, 223 Mass. 104, 111 N.E. 691. And see John L. Whiting-J. J. Adams Co. v. Adams-White Brush Co., 1927, 260 Mass. 137, 156 N.E. 880. The court therefore concluded that, as plaintiff and defendant were not in direct competition with each other, plaintiff had failed to make out a case of unfair competition.

 As we read the Massachusetts cases, they do not lay down any such inflexible rule of law, but only go to the extent of holding that in particular circumstances the absence of actual competition between the parties may be an indication that there was in fact no likelihood of confusion of source as between the respective products of the parties. If defendant's diamond mark in Exhibit 3 were really deceptively similar to an unregistered trademark owned by the plaintiff, we are confident the Massachusetts courts would hold the defendant liable as an infringer under the facts of this case. The shoe manufacturers to whom defendant sells its soles for incorporation on new shoes are certainly in competition with plaintiff, and would be liable as infringers for selling shoes with plaintiff's mark on the sole; and defendant would be liable also, as a contributory infringer. See Reading Stove Works v. S. M. Howes Co., 1909, 201 Mass. 437, 441, 87 N.E. 751, 21 L.R.A.,N.S., 979; Kay Dunhill, Inc. v. Dunhill Fabrics, Inc., D.C.S.D.N.Y.1942, 44 F.Supp. 922, 928. See also American Law Institute, Restatement of Torts, § 734; § 712, Comment e; § 728, Comment d.

 But if plaintiff has any unregistered common law trade-mark here, it certainly does not consist of a diamond-shaped outline alone, but rather, as stated in the complaint, of a "distinctive ensemble", namely, a red spot of color framed by a diamond-shaped outline. Defendant's accused mark in Exhibit 3, a solid red diamond-shaped inset vulcanized to the tread, with defendant's trade-mark "PAN-CORD" embossed thereon, could not possibly be mistaken for plaintiff's so-called "distinctive ensemble." Therefore, we agree with the district court's conclusion that the plaintiff has failed to make out a case of

unfair competition, though for a different reason.

The interlocutory decree of the District Court is affirmed in so far as it denies relief to the plaintiff for alleged infringements of its registered trade-mark and for alleged unfair competition. In so far as the decree grants an injunction against the defendant and directs an accounting, the same is vacated. The case is remanded to the District Court with direction to dismiss the complaint in its entirety, with costs to the defendant.