**PLASTILITE CORPORATION, Appellant,**

v.

**KASSNAR IMPORTS, Appellee.**

**Patent Appeal No. 74–556.**

United States Court of Customs and Patent Appeals.

Jan. 9, 1975.

H. Robert Henderson, Henderson & Strom, Des Moines, Iowa, attorney of record, for appellant.

Keith D. Beecher, Jessup & Beecher, Sherman Oaks, attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board, abstracted at 180 USPQ 527 (1973), granting appellee-petitioner's petition for cancellation of appellant-respondent's trademark registration. We affirm.

## FACTS AND PROCEEDINGS BELOW

Appellant owns registration No. 863,-462, dated January 14, 1969, on the principal register. This issued on application serial No. 274,889, filed June 27, 1967, alleging first use in commerce on February 1, 1967, for the following mark for "Fishing Floats":

The application indicates that "[t]he drawing is lined on the upper half of the sphere for the color yellow and on the lower half of the sphere for the color orange" and states that "[t]he mark is used by manufacturing the actual floats with the upper half thereof in yellow and the lower half thereof in orange." [1]

---

1. Registration of the mark was originally refused by the examiner on the basis that it comprises "merely a particular color combination or ornamentation [sic] feature of the goods and not a trademark as defined in the Trademark Act to identify and distinguish a particular source of [sic] commercial origin for said goods." In response to the examiner's request for evidence "showing that the coloration, per se, is brought before the public as a trademark, that it had been promoted as such, and that it is recognized by the purchasing public as a badge of origin," appellant submitted its 1968 catalog showing,

Appellee is an importer and, in April 1971, imported spherical fishing floats having an upper hemisphere colored yellow and a lower hemisphere colored orange through U. S. Customs in Seattle and delivered them to its customer. Pursuant to 19 U.S.C. § 1499 [2] the Customs Service required the floats to be returned for destruction for allegedly infringing appellant's registration. Some of them were returned and destroyed, and a penalty was assessed for those not returned.

Appellee petitioned for cancellation of appellant's registration on the ground that:

the registration was issued by the United States Patent Office erroneously and in contravention to established trademark law, so as to create in Respondent an invalid proprietorship in a color combination of a common object.

In finding that appellant's mark does not serve as an indication of origin and granting the petition for cancellation, the board said:

In this regard, there is of record herein a copy of respondent's catalog of goods for each of the years 1968 through 1972 wherein its "GLO–BOB" [orange and yellow] floats are pictured in close association with its "PLASTI-BOB" red and white floats, but, in none thereof, with the exception of the 1972 catalog, is there any indication that the orange and yellow design in question was intended to be anything other than ornamental. In the last mentioned catalog, a registration notice appears on the orange portion of the "GLO–BOB" float pictured therein.

Considering that the orange and yellow design of respondent's floats is certainly ornamental, that it has long been the practice in the trade to color floats, and the fact, as further shown

by the record in this case, that respondent has not promoted its floats to the general public, we are in full agreement with the petitioner that to the ultimate purchasers thereof the orange and yellow design in question would be regarded as mere ornamentation rather than as an indication of origin.

## OPINION

◼ Throughout the proceedings it has been impliedly assumed—and we agree—that appellee has standing to petition to cancel appellant's registration as a person who believes he is or will be damaged by such registration. (Section 14 of the Lanham Act, 15 U.S.C. § 1064.) Such belief would arise from the destruction of some of appellee's imported floats, being assessed a penalty on others, and being deterred from importing such floats.

Although neither appellee-petitioner nor the board cited any section of the Lanham Act as the basis for cancellation, such action would obviously rest on a finding that appellant's mark is not a "trademark" within the meaning of section 1 (15 U.S.C. § 1051), the preamble of section 2 (15 U.S.C. § 1052), and the definition in section 45 (15 U.S.C. § 1127). See In re Soccer Sport Supply Co., Cust. & Pat. App., 507 F.2d 1400.

◼ Color or colors used as mere surface decoration cannot be monopolized by a claim to trademark rights therein. See In re Swift & Co., 223 F.2d 950, 955, 42 CCPA 1048, 1053 (1955). Color may, however, be part of a trademark where it is used in a particular manner. See In re Hehr Mfg. Co., 279 F.2d 526, 47 CCPA 1116 (1960). Ornamentation will not prevent registration so long as a mark with the color(s) used in a particular manner *primarily* indicates source. If the mark is inherently distinctive, it is registrable. If not,

---

inter alia, red-white and yellow-orange, spherical fishing floats. Appellant also stated that a registration of a similar mark consisting of a "green cap on a bobber" had been issued to another party. The mark was then published for opposition and registered.

2. Tariff Act of 1930, § 499, ch. 497, 46 Stat. 728, as amended by the Customs Administrative Act of 1938, §§ 15, 16(a), ch. 679, 52 Stat. 1084, and as further amended by The Customs Courts Act of 1970, § 301(k), Pub. L.No. 91–271, 84 Stat. 289.

there must be evidence showing that the mark has become distinctive. See In re Soccer Sport Supply Co., supra; In re Hehr Mfg. Co., supra.

### Is Mark Inherently Distinctive?

█ The record establishes that prior to appellant's adoption and use of its color scheme,[3] floats had been sold having the upper half of the sphere white and the lower half red. Thus, appellant merely changed the color scheme from red and white to yellow and orange. While, under these circumstances, the yellow and orange colors certainly have been applied in a particular manner, they cannot be regarded as having been applied in an arbitrary or distinctive manner compared to the color scheme of the red and white floats. Accordingly, we hold that appellant's mark is not inherently distinctive.

### Has Mark Become Distinctive?

█ Appellant's principal means of advertising has been its products catalog, distributed to its customers (jobbers and wholesalers)—not the ultimate consumers.[4] Not only did appellant fail to submit any evidence on the number of catalogs distributed, but the catalogs themselves fail to show that the yellow-orange design as applied to spherical floats has become distinctive as indicating a particular source of the goods. They display spherical, yellow-orange floats side by side with the conventional spherical, red-white floats. This supports the inference that the yellow-orange color scheme is merely a different ornamentation from that used for the conventional float. The term "GLO–BOB" is used only with the yellow-orange floats, while the term "PLASTI–BOB" is used on both the yellow-orange floats and the conventional red-white floats.[5] The 1970 catalog employs an "R" in a circle on an oval-shaped, yellow-orange float pictured underneath the spherical, yellow-orange float. No such notice appears in the 1971 catalog, and, as noted by the board, only in the 1972 catalog is it shown on the spherical, yellow-orange float pictured therein. Accordingly, we cannot conclude that the evidence shows that appellant has promoted its yellow-orange color scheme as a trademark for its floats. Cf. In re Hehr Mfg. Co., supra.

█ Appellant emphasizes that its intent in adopting the yellow-orange color scheme was for this to function as a trademark and criticizes the board for stating that appellant had not promoted its floats to the general public. However, it is the association of the mark with a particular source by the ultimate consumers which is to be measured—not appellant's intent. In re Meyer & Wenthe, Inc., 267 F.2d 945, 46 CCPA 919 (1959).

In view of the foregoing, we hold that appellant's mark has not become distinctive as primarily an indication of source of appellant's goods.

The decision of the board is affirmed.

Affirmed.

---

3. Appellant's registration relates only to spherical floats, although it manufactures yellow and orange floats in a variety of other shapes.

4. Appellant refused to reveal its sales volume and failed to indicate the amount of advertising in trade journals.

5. From the record it would appear that these word marks are registered, although the registrations themselves were not produced. Also, the "O" in "BOB" is frequently replaced by a two-dimensional drawing of a float.