QUABAUG RUBBER COMPANY,
Plaintiff, Appellee,

v.

FABIANO SHOE CO., INC.,
Defendant, Appellant.

No. 76–1572.

United States Court of Appeals,
First Circuit.

Heard April 7, 1977.

Decided Oct. 31, 1977.

As Amended Dec. 1, 1977.

Sewall P. Bronstein, Boston, Mass., with whom John D. Woodberry, Dike, Bronstein, Roberts, Cushman & Pfund, David D. Dretler, and Robert E. Meyer, Boston, Mass., were on brief, for defendant, appellant.

I. Stephen Samuels, Boston, Mass., with whom Thompson, Birch, Gauthier & Samuels, and David Silverstein, Boston, Mass., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and MILLER,** Judge.

MILLER, Judge.

Fabiano Shoe Company, Inc. ("Fabiano") appeals from an amended judgment (1) enjoining it from using in the United States or its territories either of two specified yellow label trademarks [1] or any other yellow label confusingly or deceptively similar thereto in connection with the manufacture, sale, offer for sale, or advertisement of boot soles, boots, or other goods in the footwear field, except in the case of boots with genuine VIBRAM soles manufactured by Vibram or its licensees in foreign countries, and (2) awarding damages of $45,296 to

---

** Hon. Jack R. Miller of the United States Court of Customs and Patent Appeals, sitting by designation.

1. The first yellow label trademark (the "yellow label" mark) is a combination of U.S. Registration Nos. 822,309 (1967) of "VIBRAM" for ski and mountain climbing boot parts and 997,609 (1974) of an elongated yellow-colored octagon for boot soles and heels. These marks were registered and are owned by Vibram S. p. A. ("Vibram"), an Italian corporation not a party to this action, which licensed them to Quabaug Rubber Company ("Quabaug"). The second yellow label trademark is an elongated yellow-colored oval bearing the words "THE ALPS fabiano ROCCIA."

plaintiff-appellee Quabaug.[2] Quabaug sought relief from trademark infringement under both 15 U.S.C. § 1114 and the common law and from unfair competition under 15 U.S.C. § 1125(a), the common law of unfair competition, and the Massachusetts Anti-Dilution Statute (Mass.Gen.Laws (Ter. ed.) ch. 110, § 7A). We affirm the award of injunctive relief and reverse the award of damages.

## BACKGROUND

Quabaug is a domestic manufacturer of rubber soles and heels. Since 1937 Vibram has manufactured and sold rubber lug soles under its VIBRAM trademark in Italy and the United States and has licensed others to manufacture and sell soles using Vibram's molds and rubber formulations under the VIBRAM mark. In 1964, Quabaug and Vibram entered into a licensing agreement which provided in pertinent part that—

1. Licensor [Vibram] grant to Licensee [Quabaug] the sole right for manufacturing and selling in the whole territory of the United States of America soles, heels, heel tips, rubber plates and other accessories for boots, sport articles and any other product now already manufactured by Licensor, in all the types and models which Licensee deems interesting for sale in the U.S.A. market, including also those products which should be created by Licensor during the validity of this Agreement.

2. Soles, heels, etc. and all the other articles thus manufactured by Licensee shall bear Licensor's trademark "VIBRAM" in its characteristic script and framing, such as it is already used by Licensor for its own products.

In an amendment to the agreement, effective January 1, 1974,[3] the parties cancelled the above paragraphs 1 and 2 of the 1964 agreement and substituted therefor the following—

Vibram grants to Quabaug a sole and exclusive right and license in the United States to use the trademarks listed on the attached Exhibit A as well as all other trademarks now owned by or subsequently owned by Vibram. The licensed trademarks are to be used on soles, heels, and other footwear-related goods. Quabaug has the right to enforce the licensed trademark rights against infringers in the United States.

The district court found that this amendment was "for purposes of clarification."

When the 1964 agreement was entered into, the mark VIBRAM in an octagon was standardly applied to boots by molding it into the shank or instep portion of all soles in the same color as the soles. Vibram and Quabaug did not begin marketing the so-called "yellow label" soles in the United States until 1968.

Fabiano is engaged in the importation and sale of boots through retail stores and mail order catalogs. Since its inception in 1956, substantial numbers of these boots have been fitted abroad with VIBRAM soles manufactured by Vibram or one of its foreign licensees. Beginning in December 1971, Fabiano began importing and reselling boots in the United States which were not fitted with soles manufactured by Vibram or its licensees. These boots bore the mark "The Alps Fabiano Roccia," or similar wording, within a yellow-colored elongated oval molded into the shank or instep portion of the soles of the boots.

The district court found that while Fabiano continued to advertise that Fabiano boots had VIBRAM soles, it frequently filled customer orders with boots having the "Alps Fabiano" soles without informing its customers of the substitution. The court also found that Fabiano's customers were deceived by its practices, in part because of the similarity of Fabiano's yellow-colored oval mark and the genuine VIBRAM mark, and in part because they were conditioned

---

2. An award of attorney's fees to Quabaug was deleted by stipulation of the parties.

3. The instant suit was filed March 16, 1972.

by Fabiano's previous advertising and delivery of shoes with genuine VIBRAM soles. The court further found that these activities by Fabiano "irreparably injured Quabaug's fine business reputation and have caused Quabaug financial loss."

## OPINION

### Fabiano's Motion to Dismiss

■ On July 19, 1972, Fabiano filed a motion to dismiss, which was denied on November 1, 1972. Although the motion did not specify under which rule of the Federal Rules of Civil Procedure it was made, a motion to dismiss need not do so. *Galdi v. Jones,* 141 F.2d 984 (2d Cir. 1944). Moreover, although Fabiano inexplicably referred to a section of the Copyright Act, 17 U.S.C. § 8, as a basis for the dismissal, we are satisfied that its statement, that Quabaug "is not a proper party to bring this action as it is a licensee," and Quabaug's response thereto, that it is the proper party as "the sole and exclusive party which is allowed to use the trademark in suit within the United States, even as against its licensor," sufficiently alerted the district court that the motion was being made pursuant to Fed.R.Civ.P. 12(b)(7). The fact that the court denied the motion at a hearing prior to trial, as provided for in Fed.R.Civ.P. 12(d), indicates that the court treated the motion as made pursuant to Rule 12(b). After denial of its motion, nothing further was required of Fabiano to preserve this point for review, and the correctness of the denial is properly before us.[4]

### (a) Trademark Infringement Claims

The correctness of the denial of the motion to dismiss depends upon whether Quabaug's status is such that it had a right to bring suit in the absence of Vibram, the owner of the United States registered trademark; or, in other words, whether Vibram is an indispensable party to the suit. Fed.R.Civ.P. 19. On this point, the findings of fact by the district court are contradictory. Findings 13 and 26, that Quabaug is "exclusively licensed" to use the VIBRAM mark in the United States and that Quabaug and Vibram have adhered to that agreement, are contradicted by Findings 12, 17, 19, and 20, that Vibram has sold soles with the VIBRAM mark to customers in the United States other than Quabaug. Although Quabaug maintains that such sales by Vibram were made through Quabaug or with Quabaug's permission, the record contains invoices showing sales by Vibram *directly* to customers in the United States, and there is no evidence showing that such sales were made with Quabaug's permission.[5]

■ Quabaug admits that it does not have the power, under either the original 1964 agreement with Vibram or the 1974 amendment, to exclude importation of soles bearing the VIBRAM mark. However, an owner, assignee, or "exclusive licensee" of a registered United States trademark would have such power. 15 U.S.C. § 1124; *Bourjois Co. v. Katzel,* 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923). In *Bourjois,* the foreign owner of trademarks for face powder transferred its business, including the ownership of the trademarks and goodwill associated therewith, to a company in the United States. In a suit by the United States company against an importer who purchased the genuine face powder abroad, the Court held that, by virtue of its ownership of the trademarks in the United States, the company could maintain an infringement suit and lawfully exclude any importations of the trademarked goods even though genuine (and, in dictum, even as against the

---

**4.** We note that the absence of an indispensable party may be raised at any time, even by a reviewing court on its own motion. *McShan v. Sherrill,* 283 F.2d 462, 464 (9th Cir. 1960).

**5.** A statement filed with the district court *after final judgment* purportedly by a vice president

of Vibram reciting that such sales were made "pursuant to Plaintiff's authorization and control" is not in evidence, was not made under oath, and was not subject to cross-examination. Quabaug cannot rely on it for proof.

former owner of the marks). In drawing an analogy to patents,[6] the Court stated:

If the goods were patented in the United States a dealer who lawfully bought similar goods abroad from one who had a right to make and sell them there could not sell them in the United States. *Boesch v. Graff,* 133 U.S. 697 [10 S.Ct. 378, 33 L.Ed. 787]. The monopoly in that case is more extensive, but we see no sufficient reason for holding that the monopoly of a trade mark, so far as it goes, is less complete. [*Id.* at 692, 43 S.Ct. at 245.]

The pertinent portion of the Lanham Act relating to trademark infringement actions provides that an infringer "shall be liable in a civil action *by the registrant* for the remedies hereinafter provided." (Emphasis ours.) 15 U.S.C. § 1114(1). Although one court, at least, has stated that "only the registrant" can pursue such remedies (*Volkswagenwerk Aktiengesellschaft v. Dreer,* 224 F.Supp. 744, 746 (E.D.Pa.1963)), other courts have followed the approach used in patent infringement cases and permitted trademark infringement suits to be maintained by *exclusive* distributors and sellers of trademarked goods, *i. e.,* "exclusive licensees" who had a right by agreement with the owner of the trademark to exclude even him from selling in their territory. *See G. H. Mumm Champagne v. Eastern Wine Corp.,* 142 F.2d 499 (2d Cir.), *cert. denied,* 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944); *Alfred Dunhill of London,*

*Inc. v. Kasser Distillers Products Corp.,* 350 F.Supp. 1341 (E.D.Pa.1972), *aff'd per curiam,* 480 F.2d 917 (3d Cir. 1973); *Browne-Vintners Co. v. National Distillers and Chemical Corp.,* 151 F.Supp. 595 (S.D.N.Y. 1957); *Graef Cowen Corp. v. Honey Web, Inc.,* 7 N.Y.S.2d 134 (1938).[7] There appear to be no cases where a nonexclusive licensee has been permitted to maintain a trademark infringement suit in the absence of the "registrant." [8]

We are satisfied that Quabaug, although it may be termed a "licensee" as the sole manufacturer in the United States able to use the VIBRAM mark, does not have the full powers of an "exclusive licensee" or assignee. Notably absent is the power to exclude importations and sales by Vibram and its foreign licensees in the United States. Quabaug argues that it could not have been given more extensive powers by Vibram without violating antitrust laws. This could be correct to the extent that Vibram, as licensor, might not have been able to maintain ownership of the registered trademark and, at the same time, to agree not to compete with its licensee if such an arrangement was used as a device to establish market dominance or produce an unreasonable restraint of trade. *See Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951). However, consistent with *Bourjois, supra,* and the antitrust laws, Vibram could have assigned its United States registration to Quabaug. This it did not do. Thus,

---

**6.** *Waterman v. McKenzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), is the leading Supreme Court case on the subject of the right of a licensee to bring suit for patent infringement. There the Court differentiated between (1) an agreement that transfers the patentee's exclusive right to make, use, and sell a patented article (in effect an assignment), and (2) what it termed a "mere license," the transfer of less than the exclusive right to make, use, and sell. Under an assignment, the assignee would have the right to sue infringers in his own name; but a "mere licensee" would have no standing to bring an infringement suit.

**7.** Quabaug's citation to *Dunhill of London* and to *Scovill· Mfg. Co. v. United States Electric Mfg. Corp.,* 31 F.Supp. 115 (S.D.N.Y.1940), appears to be misplaced. In *Dunhill,* the plaintiff

was a wholly-owned subsidiary of the trademark registrant—a situation not present here. In *Scovill Mfg. Co.,* the court, in dictum, implied that Sears Roebuck & Company (the exclusive selling agent of plaintiff's goods and the exclusive user of plaintiff's mark) would have standing to sue for infringement. Again, that situation is not present here.

**8.** 15 U.S.C. § 1127 provides that the term "registrant" embraces the assignee thereof, and an *exclusive* licensee is an assignee. *Ste. Pierre Smirnoff, FLS, Inc. v. Hirsch,* 109 F.Supp. 10, 12 (S.D.Cal.1952). A *nonexclusive* licensee is not an assignee and, therefore, has no cause of action under 15 U.S.C. § 1114. *Acme Valve & Fittings Co. v. Wayne,* 386 F.Supp. 1162, 1165 (S.D.Tex.1974).

Quabaug is not a "registrant" or an "exclusive licensee" and does not have standing to assert federal statutory trademark infringement under the Lanham Act, 15 U.S.C. § 1114. Nor does it have standing to seek relief for common law trademark infringement, since only the *owner* of the trademark may do so. Restatement of Torts, § 711. Accordingly, we conclude that the district court erred in denying Fabiano's motion to dismiss with respect to the federal statutory and common law trademark infringement claims of Quabaug.

### (b) *Section 1125 (a) Claim*

However, we are persuaded that the district court correctly denied Fabiano's motion to dismiss with respect to the false designation and description claim (15 U.S.C. § 1125(a)).[9] This section permits "*any person* who believes that he is or is likely to be damaged" to bring a "civil action." (Emphasis ours.) Thus, one need not be the owner of a federally registered trademark to have standing in a federal court. *Norman M. Morris v. Weinstein,* 466 F.2d 137 (5th Cir. 1972); *L'Aiglon Apparel Inc. v. Lana Lobell,* 214 F.2d 649 (3d Cir. 1954); *D. M. & Antique Import Corp. v. Royal Saxe Corp.,* 311 F.Supp. 1261 (S.D.N.Y.1970). We recognize that, although the Lanham Act was intended to enlarge the category of activities proscribed by federal law at the time of its enactment in 1946 and is to be broadly construed in that context, section 1125(a) "does not have boundless application as a remedy for unfair trade practices." *Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 237, 183 USPQ 193, 196 (2d Cir. 1974). The basis for an action under this section is use of a mark in interstate commerce which is likely to cause confusion or to deceive purchasers concerning the source of the goods. *Mortellito v. Nina of California, Inc.,* 335 F.Supp. 1288, 1294, 173 USPQ 346, 350 (S.D.N.Y.1972). Thus, one who may suffer adverse consequences from a violation of section 1125(a) has standing to sue regardless of whether he is the registrant of a trademark. *Alfred Dunhill Ltd., supra* at 236, 183 USPQ at 195; *Mortellito, supra* at 1294, 173 USPQ at 350. *See also National Lampoon, Inc. v. American Broadcasting Companies, Inc.,* 376 F.Supp. 733, 746 (S.D.N.Y.), *aff'd,* 497 F.2d 1343 (2d Cir. 1974) (indirect competitors have standing); 1 R. Callmann, *Unfair Competition, Trademarks & Monopolies* § 18.2(b) at 625 (3d ed. 1967) ("dispositive question" is whether plaintiff "has a reasonable interest to be protected against false advertising").

On the facts alleged by Quabaug in its complaint and adduced at trial, we conclude that Quabaug stated a claim under 15 U.S.C. § 1125(a) and showed a sufficient nexus between itself and the alleged conduct of Fabiano to confer standing to sue. Fabiano's motion to dismiss was properly denied.

### *Injunctive Relief*

Although the wording of 15 U.S.C. § 1125(a) is directed to one who "is or is likely to be damaged," a showing that the defendant's activities are likely to cause confusion or to deceive customers suffices to warrant relief, at least in cases where injunctive relief is requested. *Geisel v. Poynter Products, Inc.,* 283 F.Supp. 261, 158 USPQ 450 (S.D.N.Y.1968); 1 R. Callmann, *supra* at 624; 2 J. McCarthy, *Trademarks and Unfair Competition* § 27.5 at 250 (1973). This showing is closely analogous to, if not identical with, the likelihood-of-confusion standard applied in federal trademark infringement actions. *See Mortellito v. Nina of California, Inc., supra.* Quabaug has shown much more than a "likelihood of confusion" here. It has shown instances of false advertising by Fabiano (involving the "yellow label" mark) and has adduced testimony showing that Fabiano's customers were confused and deceived by Fabiano's use of a similar yellow label on the boots it sold and by the fact that it had previously supplied them with boots having genuine

---

**9.** The district court also properly exercised pendent jurisdiction over Quabaug's common-law unfair competition claim and its claim for injunctive relief under the Massachusetts Anti-Dilution Statute.

VIBRAM soles and had not notified them of the change.[10] The district court found from ample evidence that customers were "confused and fooled" by Fabiano's conduct and concluded that defendant's mark was "confusingly and deceptively" similar to the "yellow label" mark. We are not persuaded that the court's conclusion was erroneous. *See Sarah Coventry, Inc. v. Sardelli & Sons, Inc.,* 526 F.2d 20, 185 USPQ 617 (1st Cir. 1975).

■■■■ Although we agree with Fabiano that color alone cannot be appropriated as a trademark,[11] we do not agree with its contention that the district court "found trademark significance . . . on the basis of color alone." Color in combination with a distinctive arbitrary design can be a valid trademark. *Mishawaka Rubber & Woolen Manufacturing Co. v. Panther-Panco Rubber Co.,* 153 F.2d 662, 68 USPQ 232 (1st Cir. 1946). Advertising the color as Quabaug has done can serve to make such a mark more distinctive. 1 J. McCarthy, *supra* § 7:17 at 181. Additionally, United States registration No. 997,609 of an elongated yellow-colored octagon, the validity of which Fabiano has not challenged, is prima facie evidence that such mark has become distinctive of the goods in commerce.[12] 15 U.S.C. § 1052. Fabiano's contentions (that, prior to Quabaug's institution of the suit, the Vibram "yellow label" mark had not been registered and had not

acquired secondary meaning) are not material, since the district court found that Fabiano's activities were carried out with intent to deceive its customers and that there were actual instances of deception, *i. e.,* "palming off" or "passing off."[13] *See Pic Design Corp. v. Bearings Specialty Co.,* 436 F.2d 804, 806–07, 168 USPQ 321, 322 (1st Cir. 1971).

■■■■ We hold that the district court's determination of a section 1125(a) violation and award of injunctive relief to Quabaug were proper.[14]

## Damages

■■■■ In order to recover damages for a section 1125(a) violation, the aggrieved party must show that it suffered actual harm to its business.[15] *Electronics Corp. of America v. Honeywell, Inc.,* 358 F.Supp. 1230, 179 USPQ 73 (D.Mass.), *aff'd per curiam,* 487 F.2d 513, 180 USPQ 97 (1st Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575, 181 USPQ 75 (1974). A precise showing is not required, and a diversion of sales, for example, would suffice. *See H. A. Friend & Co. v. Friend & Co.,* 276 F.Supp. 707, 156 USPQ 306 (C.D. Cal.1967), *aff'd,* 416 F.2d 526, 163 USPQ 159 (9th Cir. 1969). However, section 1125(a) was not intended to provide a windfall. *Gold Seal Co. v. Weeks,* 129 F.Supp. 928, 940, 105 USPQ 407, 416 (D.D.C.), *aff'd,* 230

10. Thus, this case differs materially from *Coca-Cola Co. v. Snow Crest Beverages, Inc.,* 64 F.Supp. 980 (D.Mass.1946), *aff'd,* 162 F.2d 280 (1st Cir. 1947), wherein this court noted that there was no evidence that the defendant, a producer of "Polar Cola," ever suggested to bartenders that they substitute its drink for Coca-Cola when the latter was ordered by customers.

11. *Plastilite Corp. v. Kassnar Imports,* 508 F.2d 824, 184 USPQ 348 (CCPA 1975).

12. Fabiano's assertion that "[t]here is no evidence that Vibram's gold octagonal label was ever used in commerce without the word VIBRAM contained therein" is immaterial. The registration is prima facie evidence that the yellow-colored octagonal mark is distinctive per se.

13. "Palming off" has been defined as "an attempt by one person to induce customers to

believe that his products are actually those of another." *Remco Industries, Inc. v. Toyomenka, Inc.,* 286 F.Supp. 948, 954 (S.D.N.Y.), *aff'd,* 397 F.2d 997 (2d Cir. 1968).

14. Therefore, it is unnecessary to reach Quabaug's claim for injunctive relief under the Massachusetts Anti-Dilution Statute and under the common law of unfair competition.

15. In trademark infringement actions, however, recovery has been granted as a deterrent to deliberate infringement, *e. g., Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.,* 349 F.2d 389 (2d Cir. 1965), *cert. denied,* 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966); also, under an unjust enrichment theory, *e. g., Blue Bell Co. v. Frontier Refining Co.,* 213 F.2d 354, 363 (10th Cir. 1954). A showing of actual damages was not required.

F.2d 832, 108 USPQ 400 (D.C. Cir. 1955), *cert. denied,* 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed.2d 50, 111 USPQ 467 (1956).

■ Quabaug has not shown that any trade was diverted from it or that it suffered any lost sales due to Fabiano's conduct; indeed, Quabaug admits that it was Vibram which has been financially damaged by "direct loss of sales to the Italian manufacturer of Fabiano's boots who . . . purchased . . . substitute . . . soles."

The only "harm" or "damage" Quabaug claims to have suffered is that a "prospective purchaser of Yellow Label soles from Quabaug, who has heard rumors that the genuine Yellow Label soles on Fabiano boots wear poorly" will be "likely to buy lug soles from a U.S. competitor of Quabaug's." Quabaug has not shown that such "rumors" exist or that Fabiano's boots do in fact "wear poorly." The only portion of the record relating to damage to Quabaug is testimony by Quabaug's president expressing his *belief* that Quabaug's reputation had been injured and speculating that:

> when somebody buys a pair of boots, thinking that they are the original yellow label Vibram soles, and finds out that they don't wear as well as they thought Vibram soles were supposed to wear, they end up being disappointed, and in that fashion our reputation is damaged.

There is no evidence showing any customer complaints concerning boots with the Fabiano sole; on the contrary, the manager of a ski shop and a Fabiano customer testified that:

> the quality of the boot [Fabiano, without VIBRAM sole] hadn't dropped at all. It was one and the same [as the boot with VIBRAM sole]. The quality seemed to be the same thing.

Quabaug introduced results of tests on wearability carried out by an independent laboratory, but these are not persuasive in the absence of a showing by Quabaug that inferior wear of the Fabiano sole compared to the VIBRAM sole *in a laboratory test*

*environment* would equate with customer dissatisfaction causing injury to Quabaug's business reputation.

■ The district court's finding that Fabiano's misconduct "caused injury to many purchasers of Fabiano boots . . . thereby causing substantial damage to plaintiff" is not supported by substantial evidence and was in error. Moreover, any damages awarded Quabaug for Fabiano's section 1125(a) violation could not have been "compensation" for any financial loss suffered by Quabaug and would, instead, appear to be punitive for Fabiano's misconduct.[16] Such an award is not authorized under the Lanham Act. *Electronics Corp. of America, supra.*

■ With respect to Quabaug's common-law unfair competition claim, the common law of Massachusetts applies. *Phoenix Manufacturing Co. v. Plymouth Manufacturing Co.,* 286 F.Supp. 324, 332, 160 USPQ 56, 62 (D.Mass.1968). The essence of this cause of action is the appropriation of a competitor's business to his injury. *C. A. Briggs Co. v. National Wafer Co.,* 215 Mass. 100, 102 N.E. 87 (1913). The district court based its award on an accounting of profits and did not evaluate actual damages. Although this method is appropriate in situations where the parties are selling competing goods in the same market, in cases involving noncompeting goods, "the assumption cannot be made that the defendant's profits constitute a fair measure of the plaintiff's loss, for the defendant's sales are not diverted from the plaintiff." Restatement of Torts § 747, Comment g. at 652. The Restatement strongly supports the view that in a noncompetitive context an accounting of profits cannot be used as a substitute for proof of actual injury. *Id.* at § 747(b)(i) and (ii) and comments g. and h. *See generally Electronics Corp. of America v. Honeywell, Inc., supra.* As shown above, Quabaug is not a direct competitor of Fabiano and has not established actual injury. Accordingly, it is not entitled to a monetary award on its common law unfair competition claim.

---

**16.** We express no opinion on whether Vibram can maintain an action to recover damages.

In view of the foregoing, the district court's award of damages to Quabaug must be *reversed.* The award of injunctive relief to Quabaug is *affirmed.*