UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1525

PHC, INC.,

Plaintiff, Appellant,

v.

PIONEER HEALTHCARE, INC., ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge] 



Before

Boudin, Circuit Judge, 

Bownes, Senior Circuit Judge, 

and Stahl, Circuit Judge. 



Michael Arthur Walsh with whom Lisa A. Richards and Choate, Hall 
& Stewart were on brief for appellant. 
Esther J. Horwich with whom Steven J. Brooks was on brief for 
appellees.



February 12, 1996


BOUDIN, Circuit Judge. This case presents familiar 

problems of federal jurisdiction, civil procedure, and the

relationship between court and agency; but the problems arise

in an unusual context: that of the unique and complex legal

regime that governs trademarks and unfair competition. Since

the appeal is from an order granting a motion to dismiss, we

draw our facts from the pleadings.

I.

Plaintiff-appellant, PHC, Inc., is a Massachusetts

corporation based in Peabody, Massachusetts, which operates

alcohol and substance abuse centers across the country.

Defendant-appellees are Pioneer Health Care, Inc. and its

management affiliate Pioneer Management Systems, Inc.

(collectively, "the Pioneer companies"); the former offers

medical care services in and near the Pioneer Valley in

western Massachusetts. The Pioneer companies are

Massachusetts corporations based in West Springfield and

their names are recorded with the Massachusetts state

secretary under Mass. Gen. L. ch. 156B, 11.

At some point it came to the attention of the Pioneer

companies that PHC was using the name "Pioneer Healthcare" or

"Pioneer Health Care" in its literature. On December 13,

1993, the Pioneer companies sent a letter to PHC which

asserted that this use violated Massachusetts law and

demanded that it stop. The letter also demanded that PHC

-2- -2-

cancel its earlier registration (as of February 16, 1993) of

the mark PIONEER HEALTHCARE with the U.S. Patent and

Trademark Office. A second letter to PHC threatened

litigation. 

PHC responded in a March 17, 1993, letter, declining to

comply with any of the demands. The letter asserted that

geographic and product differences meant that there was no

confusion between the parties' respective uses of the

disputed terms. It asserted equitable defenses to any

infringement claim. And it said that the registration of the

Pioneer companies' names with the Massachusetts authorities

was irrelevant. 

The Pioneer companies in turn filed a petition with the

U.S. Patent and Trademark Office on May 25, 1994, claiming

longstanding use of the marks PIONEER HEALTH CARE and PIONEER

HEALTH and asking the office to cancel PHC's registration on

grounds of confusion. 15 U.S.C. 1052(d), 1064. The

Pioneer companies' marks were not federally registered, but

confusion between a registered mark and an earlier

unregistered "mark or trade name," id. 1052(d), may lead to 

the cancellation of the registered mark. Blanchard Importing 

& Distributing Co. v. Societe E. Blanchard et Fils, 402 F.2d 

797 (C.C.P.A. 1968). An administrative proceeding began

before the Trademark Trial and Appeal Board ("the Board"), a

component of the Patent and Trademark Office.

-3- -3-

On December 9, 1994, PHC responded by filing the present

declaratory judgment action in the district court. In its

first count, PHC sought a declaration that its own use of the

mark it had registered--PIONEER HEALTHCARE--did not violate

any rights of the Pioneer companies under section 43(a) of

the Lanham Act, 15 U.S.C. 1125(a). The second count sought

a preemptive declaratory judgment that PHC was entitled to

maintain its registration of the mark at the Patent and

Trademark Office. 

After filing its district court action, PHC asked the

Trademark Trial and Appeal Board to suspend its cancellation

proceeding pending the outcome of the court action. The

Board has a rule contemplating such suspensions where a court

action may moot the matter before the agency. 37 C.F.R. 

2.117. The Board complied with PHC's request, and the

administrative proceeding is now in abeyance.

Thereafter, the Pioneer companies moved in the district

court for dismissal of the declaratory judgment action,

urging inter alia that the district court lacked subject 

matter jurisdiction and that the action itself was "an

improper attempt to circumvent the administrative process."

In a detailed opinion dated April 12, 1995, the district

court granted the motion, relying upon both of the grounds

urged and its own discretion not to "take this case from the

. . . administrative scheme designed to hear it."

-4- -4-

II.

The district court's first ground for dismissing PHC's

complaint was jurisdictional and bore directly on count I of

the complaint. The district court construed the letters from

the Pioneer companies to PHC as threatening a suit under

Massachusetts state law to protect their corporate names; the

court said that these letters "cannot be construed as federal

charges of infringement. Pioneer [the Pioneer companies]

does not own a federally registered mark which would enable

them to bring a federal infringement action."

Taking this view of the matter, the district court then

invoked the settled rule that where a plaintiff asks a

federal court for a declaration that it is not liable on a 

state claim, there is ordinarily no federal question

jurisdiction. Public Serv. Comm'n of Utah v. Wycoff Co., 344 

U.S. 237, 248 (1952). This is generally true even if it is

assumed that a federal defense might have been offered to

defeat the state claim. Id.; see also Skelly Oil Co. v. 

Phillips Petroleum Co., 339 U.S. 667, 672 (1950). 

On appeal, PHC responds that what it sought in the

district court was a declaration that it was not liable on an

anticipated federal claim against it, namely, a potential 

claim by the Pioneer companies that PHC's conduct violated

section 43(a) of the Lanham Act, a provision explicitly

referenced in count I of PHC's complaint. Section 43(a)

-5- -5-

creates a federal civil cause of action for any one damaged

inter alia by another's use in commerce of any word, term, or 

name that

is likely to cause confusion, or to cause mistake,
or to deceive as to the affiliation, connection, or
association of such person with another person, or
as to the origin, sponsorship, or approval of his
or her goods, services, or commercial activities by
another person.

This "false designation of origin" claim under section

43(a) is a close cousin to a claim for infringement of a

federally registered mark authorized by section 32 of the

Lanham Act, 15 U.S.C. 1114. An infringement claim under

section 32 requires that the mark be a federally registered

trademark. Id. But a section 43(a) claim, which PHC 

purported to anticipate, does not require that the mark or

name be federally registered, Quabaug Rubber Co. v. Fabiano 

Shoe Co., 567 F.2d 154, 160 (1st Cir. 1977), and is commonly 

used to prevent infringement of unregistered trademarks. 3

J. Thomas McCarthy, McCarthy on Trademarks and Unfair 

Competition 27.03 (3d ed. 1992). A claim under section 

43(a) is a federal cause of action, automatically invoking

federal question jurisdiction. 28 U.S.C. 1331. See also 

15 U.S.C. 1121(a). The more difficult question is

whether PHC could reasonably have anticipated a claim against

it under section 43(a) of the Lanham Act and therefore

brought a declaratory judgment to forestall it. Whether or

not conceived of as "jurisdictional," such reasonable

-6- -6-

anticipation is a settled requirement in a federal

declaratory judgment action of this character. E.g., 

Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 439 

F.2d 871, 873 (1st Cir. 1971). A federal court will not

start up the machinery of adjudication to repel an entirely

speculative threat. 

If one looked solely at the letters sent by the Pioneer

companies, one might be genuinely puzzled whether those

letters threatened only a suit under Massachusetts law for

the misuse of a corporate name or whether they implied as

well an intent to resort to the Lanham Act. The only statute

mentioned in the letters was "Massachusetts General Laws" and

the mention was in the context of referring to PHC's use of a

corporate "name." The letters did request cancellation of

PHC's federal trademark, but they made no specific reference

to a suit for infringement or under section 43(a).

On the other hand, the conduct of PHC, as described by

the Pioneer companies' letters, could easily amount to a

violation of section 43(a); the second letter alleged that

PHC's alleged use was "misleading, confusing, and will result

in irreparable harm"--language typical of a claim under

section 43(a). The first letter threatened to seek recovery

of damages, as well as an injunction. Damages are a standard

remedy under section 43(a), 15 U.S.C. 1117; the

Massachusetts statute protecting corporate names provides

-7- -7-

only for administrative and injunctive relief. Mass. Gen. L.

ch. 156B, 11.

In all events, the question under the case law on

declaratory judgments is not whether the Pioneer companies

made a specific threat to bring a section 43(a) claim or even

had such a claim in mind. The federal declaratory judgment

statute aims at resolving potential disputes, often

commercial in character, that can reasonably be feared by a

potential target in light of the other side's conduct.

Cardinal Chem. Co. v. Morton Int'l, Inc., 113 S. Ct. 1967, 

1974-75 (1993). No competent lawyer advising PHC could fail

to tell it that, based on the threatening letters and the

surrounding circumstances, a section 43(a) suit was a likely

outcome. 

Quite likely PHC had tactical advantages in mind in

bringing the declaratory judgment action. But, absent a

showing of bad faith so substantial as to foreclose equitable

relief, its subjective aims do not matter. The question is

whether the Pioneer companies' letters made a section 43(a)

claim against PHC a reasonable prospect. Although the

district court did not pass explicitly upon this question, an

affirmative answer is so clear to us that there is no reason

to remand on this issue. Thus, the district court had

federal subject-matter jurisdiction as to count I.

-8- -8-

Federal subject matter jurisdiction over count II is

equally plain. In count II, PHC asked the court to declare

that its federally registered mark was valid; this is a

matter governed entirely by federal law and plainly within

the federal question jurisdiction of a district court.

Additionally, section 37 of the Lanham Act, 15 U.S.C. 1119,

cited in count II, empowers the federal courts to "determine

the right to registration [and] order the cancellation of

registrations" in civil cases in which a registered mark is

at issue, and provides that such determinations shall control

the Patent and Trademark Office.

III.

Although federal subject matter jurisdiction is secure

as to both count I and count II, a judge might well wonder

whether it ought to be exercised in the teeth of an

administrative proceeding pending before the Board. PHC's

claim under count II sought a declaration that PHC's federal

mark was valid; that was the very subject of the cancellation

proceeding. As for count I, issues of confusion, likely to

be addressed in the Board proceeding, might easily have been

pertinent, perhaps even controlling.

Problems of coordination and priority between court and

agency are usually discussed under the rubric of primary

jurisdiction. E.g., Massachusetts v. Blackstone Valley Elec. 

Co., 67 F.3d 981, 992 (1st Cir. 1995). The district court 

-9- -9-

did not use this phrase, but it did rely upon two cases from

the Seventh Circuit that dismissed as premature declaratory

judgment suits brought solely to affirm federal registration

of trademarks; in each case proceedings were still pending

before the Board.1 The district court also noted that it

saw no reason "to take this case" from "an administrative

scheme designed to hear it."

The primary jurisdiction rubric is less an organized

doctrine than a set of precedents that guide courts in

deciding when an issue should be resolved in the first

instance by an agency that has special competence to address

it. United States v. Western Pacific R.R. Co., 352 U.S. 59, 

64 (1956). The expertise of the agency, avoidance of

conflict, indications of legislative intent, and other

factors may permit, sometimes even require, such deference by

court to agency. Pierce, Shapiro & Verkuil, Administrative 

Law and Process 5.8 (2d ed. 1992). Although the agency's 

own decision may be subject to judicial review, such review

is customarily of a limited kind.

Two factors weigh heavily against deference to the

administrative proceeding here. First, the Board is not an

ordinary administrative agency whose findings control unless

 

1Homemakers, Inc. v. Chicago Home for the Friendless, 
313 F. Supp. 1087 (N.D. Ill. 1970), aff'd, 169 U.S. P.Q. 262 
(7th Cir., cert. denied, 404 U.S. 831 (1971); Merrick v. 
Sharpe & Dohme, 185 F.2d 713 (7th Cir. 1950), cert. denied, 
340 U.S. 954 (1951).

-10- -10-

set aside after court review under a highly deferential

standard. Under the Lanham Act, where a contested Board

proceeding has already addressed the validity of the mark,

the Board's findings can be challenged in a civil action in

district court through new evidence, and, at least to a large

extent, the issues can be litigated afresh. 15 U.S.C. 

1071(b).2 And Congress permits an initial proceeding in the

district court to challenge or affirm a federal registered

mark in civil suits in which a federally registered mark is

in issue, even without any prior resort to the Board. 15

U.S.C. 1119. 

Second, at least where an infringement claim is

involved--whether directly asserted by an "owner" or

challenged in a declaratory action--there is often some

urgency. Ongoing business conduct is likely to be involved

and harm, possibly irreparable, may be accruing. Further,

the Board cannot give relief for an infringement claim,

either injunctive or by way of damages. Under these

circumstances, awaiting the Board's action is less

attractive; and this is doubly so because (as already noted)

 

2The law in this area is complicated, and perhaps
confused; no simple generalization does it justice. See 3 
Mccarthy, supra, 21.05. For present purposes, it is enough 
that something close to de novo proceedings are often 
possible. See Goya Foods, Inc. v. Tropicana Prod., Inc., 846 
F.2d 848, 853 (2d Cir. 1988). 

-11- -11-

its administrative findings can so easily be relitigated in

court.

Such reasons persuaded the Second Circuit in Goya Foods, 

Inc. v. Tropicana Prod., Inc., 846 F.2d 848 (2d Cir. 1988). 

There, a district court had dismissed a declaratory action

brought to declare the plaintiff not liable for a possible

trademark claim; the district court had relied on the fact

that a proceeding to oppose the declaratory plaintiff's

trademark application was pending before the Board in denying

the plaintiff leave to proceed in court. Distinguishing

ordinary primary jurisdiction cases, the Second Circuit ruled

that the declaratory judgment on the infringement claim

should proceed and should not await the Board's action.

We take the same view and conclude that the section

43(a) claim in the present case should not be deferred based

on primary jurisdiction concerns. The Second Circuit did not

decide whether, given that the infringement claim was to be

heard by the district court at once, a companion declaratory

claim addressed to the validity of a federally registered

mark should also be heard despite the pendency of the Board 

proceeding. Our case does present that wrinkle, but we think

that the answer is clear at least in principle: both claims

should be heard if this course is more efficient; otherwise,

not.

-12- -12-

If no infringement claim were made in the district court

but only a claim that a federal registration was or was not

valid, a good argument might exist (absent unusual facts) for

awaiting the completion of any pending Board proceeding

addressed to the mark's validity. See Goya, 846 F.2d at 853. 

But where an infringement claim is also present and is going

to be considered promptly by the court, it normally makes

sense for the court to resolve a companion validity claim at

the same time, if the issues underlying the two claims 

overlap to an extent that makes this course sensible.

It is hard to say in the abstract that such an overlap

will always exist, but our own case is probably a good

illustration. Seemingly, the section 43(a) claim may turn

largely on whether there is confusion between the registered

PHC mark and the unregistered marks that the Pioneer

companies use to describe their services; and it appears

likely that this is also a central issue, perhaps the only

issue, in determining the validity of PHC's federal

registration. Put differently, if deciding count I requires

the district court to resolve much or all of the substance of

count II, it would waste everyone's time not to settle the

registration issue now.

We are not in a position to make a final judgment

whether in this case count II should be litigated at this

time, stayed, or dismissed. Neither the parties nor the

-13- -13-

district court has sought to analyze in detail the

relationship between the issues underlying the two counts in

the factual context of this case; our conjecture, pointing

toward immediate consideration of count II, is plausible but

it may or may not be warranted here. The district court is

free to make its own initial judgment.

CONCLUSION

We conclude that the district court erred in dismissing

the complaint. There is nothing in the record or arguments

before us that makes it appropriate for the district court to

dismiss or defer consideration of count I. As to count II,

the district court does have authority to decide count II

and, in our view, that would be the appropriate course if

deciding count I effectively entailed deciding many or all of

the issues underlying count II. 

The judgment of dismissal is vacated and the case 

remanded for proceedings consistent with this opinion. 

-14- -14-