Mailed:
June 10, 2013

> **This Opinion is a Precedent of the TTAB**

**United States Patent and Trademark Office**

Trademark Trial and Appeal Board

———

*In re Thomas J. Hulting d/b/a No More RINOs! Enterprises*

———

Serial No. 77666826

———

Evan T. Hulting, attorney at law, for Thomas J. Hulting d/b/a No More RINOs! Enterprises.

Tricia Sonneborn, Trademark Examining Attorney, Law Office 110 (Chris A.F. Pedersen, Managing Attorney).

———

Before Bucher, Lykos and Hightower, Administrative Trademark Judges.

Opinion by Lykos, Administrative Trademark Judge:

On February 9, 2009, Thomas J. Hulting d/b/a No More RINOs! Enterprises ("applicant") filed an intent-to-use application to register the mark No More RINOs! in standard character format for "adhesive-backed letters and numbers for use in making posters; advertising signs of paper or cardboard; bumper stickers; printed paper signs; printed paper signs, namely, table tents; stickers; stickers and decalcomanias" in International Class 16; "shirts; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; t-shirts; wearable garments and clothing, namely, shirts" in International Class 25; and "cam-

paign buttons; novelty buttons" in International Class 26.[1] Following issuance of a notice of allowance, on November 8, 2010, applicant submitted the following specimens with his statement of use for each respective class:




The trademark examining attorney refused registration of the mark under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127, on the ground that the designation is merely ornamental and informational matter and does not function as a mark for the goods in each international class. Applicant responded by submitting the following substitute specimens of use:

---

[1] Application Serial No. 77666826.



Upon final refusal of registration, applicant filed a request for reconsideration and timely appeal. Both applicant and the examining attorney filed briefs. For the reasons discussed herein, the Board affirms the refusal to register.

Section 45 of the Trademark Act defines a "trademark" in relevant part as "any word, name, symbol, or device, or any combination thereof used by a person … to identify and distinguish his or her goods … from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. "[N]ot every designation that is placed or used on or in connection with a product necessarily functions … as a trademark for said product; not every designation adopted with the intention

that it performs a trademark function and even labeled as a trademark necessarily accomplishes that purpose; and there are certain designations that are inherently incapable of functioning as trademarks to identify and distinguish the source of the products in connection with which they are used." *American Velcro, Inc. v. Charles Mayer Studios, Inc.*, 177 USPQ 149, 154 (TTAB 1973); *see also In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976) ("The Trademark Act is not an act to register mere words, but rather to register trademarks. Before there can be registration, there must be a trademark, and unless words have been so used they cannot qualify."). It is well settled that common laudatory phrases or statements that would ordinarily be used in business or in the particular trade or industry, are not registrable. *See In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999). Neither are slogans and other terms that are considered to be merely informational in nature. *See, e.g.*, *In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1232 (TTAB 2010) (ONCE A MARINE, ALWAYS A MARINE would not be perceived as a trademark but rather as an informational slogan "to express support, admiration or affiliation with the Marines"); *In re Volvo Cars of N. Am., Inc.*, 46 USPQ2d 1455, 1460-61 (TTAB 1998) (DRIVE SAFELY not registrable because it would be perceived only as an everyday, commonplace safety admonition and not as a trademark for "automobiles and structural parts

therefor"); *In re Manco, Inc.*, 24 USPQ2d 1938, 1942 (TTAB 1992) (THINK GREEN and design not regis- trable because it would be perceived only as an in- formational slogan encouraging environmental awareness and not as a trademark for weather



stripping and paper products). "The more commonly a phrase is used, the less likely that the public will use it to identify only one source and the less likely that it will be recognized by purchasers as a trademark." *In re Eagle Crest Inc.*, 96 USPQ2d at 1229 (citation omitted).[2]

"The critical inquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public." *In re Eagle Crest Inc.*, 96 USPQ2d at 1229. "To make this determination we look to the specimens and other evidence of record showing how the designation is actually used in the marketplace." *Id.* (citation omitted); *see also Bose*, 546 F.2d 893, 192 USPQ at 216 ("[T]he manner in which an applicant has em- ployed the asserted mark, as evidenced by the specimens of record, must be carefully considered in determining whether the asserted mark has been used as a trademark with respect to the goods named in the application.").

---

[2] *See also Cosmetically Sealed Indus. Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 43 USPQ2d 1956, 1958 (2d Cir. 1997) ("[T]he challenged phrase 'Seal it with a Kiss' (with or without the two exclamation points) is a clear instance of a non- trademark use of words . . . . The [plaintiff's] phrase 'sealed with a kiss' is a fixture of the language….").

Consistent with the guidance set forth above, we shall first examine how applicant's proposed mark is used on the specimens. When evaluating a mark that appears to be ornamental, rather than functioning as an indicator of source, "the size, location, dominance and significance of the alleged mark as applied to the goods" are all relevant factors in determining whether it is inherently distinctive. *See In re Pro-Line Corp.*, 28 USPQ2d 1141, 1142 (TTAB 1993); *In re Dimitri's Inc.*, 9 USPQ2d 1666, 1667 (TTAB 1988); *In re Astro-Gods Inc.*, 223 USPQ 621, 623 (TTAB 1984). Although there is no prescribed method or place for affixation of a mark to goods, the location of a mark on the goods "is part of the environment in which the [mark] is perceived by the public and ... may influence how the [mark] is perceived." *In re Tilcon Warren Inc.*, 221 USPQ 86, 88 (TTAB 1984). *See also In re Paramount Pictures Corp.*, 213 USPQ 1111, 1115 (TTAB 1982). We think the same concepts apply when determining whether a phrase functions as a trademark or is merely informational. The Board recently elaborated on this concept in the case of *In re Lululemon Athletica Canada Inc.*, 105 USPQ2d 1684, 1689 (TTAB 2013) in which it stated "we reject a per se rule regarding registrability based on the size of a mark on clothing. Rather, in considering the commercial impression of marks of this nature, the size of the mark is one consideration along with others, and the registrability of each mark must be determined on a case-by-case basis."

The examining attorney has submitted evidence that "No More RINOs!" is a commonly used political slogan meaning "No More <u>R</u>epublicans <u>I</u>n <u>N</u>ame <u>O</u>nly." See excerpts from www.zazzle.com and www.freerepublic.com (Office Action denying Request for Reconsideration, March 13, 2012). As further explained, the phrase is a well-recognized political call to action by a conservative wing of the Republican Party:

> Tea Party to Davis: No More Rinos. … Voters don't want a return to the "Republicans-In-Name-Only" of the President George W. Bush era, when the Republican Congress signed off on increased spending on wars and the 2008 bank bailout.

Excerpt from http://news.cincinnati.com/article/ (Office Action denying Request for Reconsideration, March 13, 2012). The slogan "No More RINOs!" is commonly used by others in the marketplace as ornamental matter on t-shirts and various other retail items in support of this movement within the Republican Party. See for example the following:



Excerpt from www.cafepress.com (Request for Reconsideration Denied, March 13, 2012);



Excerpt from www.zazzle.com (Office Action denying Request for Reconsideration, March 13, 2012).

The record evidence shows that consumers are accustomed to seeing the phrase "No More RINOs! displayed on bumper stickers, t-shirts, novelty pins and other items from many different sources. As a result, consumers will not perceive this wording as applied to applicant's goods as a source indicator pointing uniquely to applicant. Rather, consumers purchasing applicant's goods will perceive applicant's proposed mark as a political slogan commonly used by multiple individuals and entities rather than a sole source of products or services. Indeed, as the record reflects, consumers would not view the proposed mark as an indicator of the source of applicant's goods due to the nature of the political message conveyed. By way of illustration, the website www.zazzle.com in promoting its products bearing the phrase "No More RINOs!" exhorts prospective consumers to,

> Take a stand for Conservatism. Don't let Progressive RINOs continue to hijack our Party and shut out the Conservative Majority in America. NO MORE RINOS! Stand up for Conservative Values and the American People.

Excerpt from www.zazzle.com (Request for Reconsideration Denied, March 13, 2012). In fact, the website evidence placed into the record by the examining attorney demonstrates that many different sites carry T-shirts having almost identical messages and often very similar imagery.

The specimens of use for Classes 16 and 26 consist of photographs of a bumper sticker, sign and novelty pin, each displaying applicant's proposed mark in large, prominent lettering in the center of each item. Clearly, the placement, size, and dominance of the wording are consistent with informational (or ornamental), not trademark use. Such prominence is more consistent with the conveying of an informational message than with signifying a brand or an indicator of source. *Cf. Lululemon*, 105 USPQ2d at 1689 ("in considering the commercial impression of marks of this nature, the size of the mark is one consideration along with others … the overriding commercial impression of this large-size applied-for design is that of ornamentation."). Even though the phrase "No More RINOs!" as displayed on the front of the T-shirt is proportionally smaller than it is in the specimens for the other classes of goods, given the significance of the phrase, it does not have the commercial impression of a source indicator. *In re Paramount Pictures Corp.*, 213 USPQ at 1115 (location of a proposed mark is not itself determinative).

Applicant contends that the refusal should be obviated due to a change in ownership from "Thomas J. Hulting DBA Statesman Enterprises" to "Thomas J. Hulting DBA NO MORE RINOS! ENTERPRISES." Applicant's Brief p. 3. Of course, as correctly explained by the examining attorney in her brief, "a change in the DBA or any ownership change has no bearing whatsoever on trademark entitlement in this or any application." Public knowledge of the name of the owner of an asserted mark is not the test for whether matter functions as a mark. In fact, the law recognizes that matter can be a mark even when the source is unknown, so long as the mark signifies a single source. *Cf. In re Proctor & Gamble Co.*, 105 USPQ2d 1119 (TTAB 2012) (Board found design of cap of mouthwash bottle inherently distinctive and therefore pointing to a single source).

Similarly, applicant's substitute specimens bearing the tagline "By Statesman Enterprises" do not obviate the refusal. This is clearly not part of the phrase for which applicant seeks registration, and merely adding this tagline to the shirts, buttons and bumper stickers does not render the political slogan at issue here capable of functioning as a mark. The tagline is not part of the mark applied for, nor can it be added to the mark. Moreover, since a registration without the added tagline would leave the registrant free to use the proposed tagline or not, it can have no bearing on our determination of registrability. *See, e.g,, Denney v. Elizabeth Arden Sales Corp.*, 263 F.2d 347, 120 USPQ 480, 481 (CCPA 1959) (court refused to consider "house mark" used

in conjunction with the mark at issue, where the house mark was not part of the mark in the application). To the extent that the tagline "By Statesman Enterprises" conveys to purchasers that the goods come from a particular source, it would be the tagline that conveys this information, not the matter that applicant seeks to register. In addition, even if the tagline would reveal the source of the particular products to which it might be affixed, it remains true that products bearing the slogan "No More RINOs!" come not just from applicant but from many sources. *See, e.g.*, *See BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 35 USPQ2d 1554, 1558 (Fed. Cir. 1995) (approving of Board's statement that, because of the widespread use, the public "will not regard the [alleged mark at issue] as a trademark but merely as an informational symbol which denotes yellow pages").

We further note that applicant's reliance on *In re Jockey Int'l Inc.*, 192 USPQ 579 (TTAB 1976), is misplaced. That case involved the registrability of an inverted letter "Y" design mark, not a political slogan. The Board specifically rejected the argument that the inverted "Y" design mark constituted mere ornamentation, pointing to evidence such as use on of the mark on clothing labels as well as promotion thereof in advertising materials by the phrase "known the world over by this symbol" in association with the inverted-Y. As such, it is distinguishable from the case before us.

On a final note, we emphasize that applicant's intent that the slogan should function as a trademark is irrelevant to our analysis. As previously explained by the Board:

> [T]he mere fact that applicant's slogan appears on the specimens, even separate and apart from any other indicia which appear on them, does not make it a trademark. To be a mark, the term, or slogan, must be used in a manner calculated to project to purchasers or potential purchasers a <u>single</u> source or origin for the goods in question. Mere intent that a term function as a trademark is not enough in and of itself, any more than attachment of the trademark symbol would be, to make a term a trademark. (emphasis added)

*In re Manco, Inc.*, 24 USPQ2d at 1941, *quoting In re Remington Products Inc.*, 3 USPQ2d 1714, 1715 (TTAB 1987).[3]

In sum, based on the record evidence, we find that applicant's proposed mark as used on the specimens conveys a political slogan devoid of source-identifying significance and therefore fails to function as a trademark.

**Decision**: The refusal to register under Sections 1, 2 and 45 of the Trademark Act is affirmed.

---

[3] *Accord Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 45 (CCPA 1981) ("Even if appellee adopted and used BRIE NOUVEAU with the intent 'to identify its goods and distinguish them from those manufactured or sold by others' -- i.e., adopted and intended to use BRIE NOUVEAU as a trademark -- BRIE NOUVEAU must be distinctive" for its user to be able to rely on it in an opposition.); *Plastilite Corp. v. Kassnar Imports*, 508 F.2d 824, 184 USPQ 348, 350 (CCPA 1975) ("it is the association of the mark with a particular source by the ultimate consumers which is to be measured—not appellant's intent"); *Roux Labs., Inc. v. Clairol Inc.*, 427 F2d 823, 66 USPQ 34, 39 (CCPA 1970) ("The mere fact that a combination of words or a slogan is adopted and used by a manufacturer with the intent Clairol has manifested here-that it identify its goods and distinguish them from those of others-does not necessarily mean that the slogan accomplishes that purpose in reality.").