KROMA MAKEUP EU, LLC, Plaintiff,

v.

BOLDFACE LICENSING + BRAND-ING, INC., Kimberly Kardashian, Kourtney Kardashian, Khloe Kardashian and By Lee Tillett, Inc., Defendants.

Case No: 6:14–cv–1551–Orl–40GJK

United States District Court,
M.D. Florida,
Orlando Division.

Signed 08/24/2017

Nolan K. Klein, of the Law Offices of Nolan Klein, P.A., Fort Lauderdale, FL, Elizabeth Lee Beck, Jared H. Beck and Beverly Virues, Beck & Lee Trial Lawyers, Miami, FL, for Plaintiff.

Michael J. Kump, Jonathan P. Steinsapir and Gregory P. Korn, Kinsella Weitzman Iser Kump & Aldisert LLP, Santa Monica, CA, Ronnie J. Bitman, Pearson Bitman LLP, Orlando, FL, for Defendants.

## ORDER

PAUL G. BYRON, UNITED STATES DISTRICT JUDGE

This cause comes before the Court without oral argument on the following:

1. Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian's, Motion for Summary Judgment (Doc. 118), filed June 9, 2017;

2. Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 132), filed June 23, 2017;

3. Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian's, Reply in Support of Motion for Summary Judgment (Doc. 145), filed July 7, 2017;

4. Plaintiff's Motion for Partial Summary Judgment (Liability Only) (Doc. 153), filed August 11, 2017;

5. Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian's, Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law (Doc. 154), filed August 11, 2017; and

6. Plaintiff's Reply in Further Support of Its Motion for Partial Summary Judgment (Doc. 155), filed August 11, 2017.

The parties have completed their briefing and the Court is otherwise fully advised on the premises. Upon consideration and review of the record as cited by the parties in their respective briefs, the Court will grant Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff, Kroma Makeup EU, LLC ("Kroma EU"), seeks recovery from Defendants, Kimberly Kardashian, Kourtney Kardashian, and Khloe Kardashian (collectively, "Kardashian Defendants") on a vicarious liability theory for (i) common law trademark infringement, and (ii) violation of § 43(a) the Lanham Act, 15 U.S.C. § 1125(a).[1]

Defendant, By Lee Tillett, Inc. ("Tillett"), is a Florida-based corporation that owns a registered U.S. trademark in "Kroma." (Doc. 133, ¶ 3). In September 2010, Tillett and Jay Willey, Ltd. (a U.K. company owned by Jeannette Willey) entered into a license agreement granting Jay Willey, Ltd. "the right to use the trademark of [Tillett] for advertising purposes and Goods sale and promotion ...." (Id. ¶¶ 4,10). In October 2012, Tillett and Kroma EU (a different U.K. company owned by Willey) entered into a licensing agreement granting Kroma EU rights to sell Kroma products in Europe (hereinafter "License Agreement"). (Id. ¶ 5). Under the License Agreement, Tillett retained ownership of the Kroma mark. (Doc. 118–6, § 4.1). The terms of the 2010 and 2012 agreements "contain materially identical terms." (Doc. 133, ¶ 6).

Section 4.3 of the License Agreement, titled "Renewal. Protection," prescribed how the trademark was to be protected and allocated responsibilities among the

---

1. In addition to the claims against Kardashian Defendants, Kroma EU's initial complaint alleged counts of statutory and common law trademark infringement against Boldface Licensing + Branding, Inc. ("Boldface"), one count of promissory estoppel against By Lee Tillett—which this Court construed as a breach of contract claim, Doc. 52, p. 28—and one count of tortious interference against Boldface. (Id.). On February 5, 2015, default was entered against Boldface. (Doc. 37). On November 9, 2015, this Court granted Tillett's motion to compel arbitration. (Doc. 76). Accordingly, neither Boldface nor Tillett remain a party to this action.

parties. (Doc. 118–6). The relevant subsections are reproduced in full below:

4.3.1. [Tillett] undertakes to renew regularly the certificate on the trademark/brand name and other Goods patents/inventions/industrial samples, and to protect them properly from any attempts of illegal use, to the best of his knowledge.

4.3.2. [Kroma EU] is obliged to inform [Tillett] of any illegal use of the trademark in [Europe], to the best of his knowledge.

(Doc. 118–6, §§ 4.3.1, 4.3.2). In May 2012, Kardashian Defendants and Boldface "entered into a licensing agreement authorizing Boldface to create and market … cosmetics endorsed by the" Kardashian Defendants. (Doc. 133, ¶ 14). In June 2012, Tillett learned that Boldface planned to use the name "Khroma" for the Kardashian-endorsed cosmetics line, then sent Boldface a cease and desist letter. (*Id.* ¶¶ 14, 15). The parties dispute whether Boldface or Kardashian Defendants selected "Khroma" as the name for the products. (Docs. 118, ¶ 12; 132, § II.1).

In October 2012, Tillett and Boldface began settlement discussions. (Doc. 133, ¶ 16). Tillett indicated to Willey that her UK damages would be sought during negotiations. (*Id.* ¶ 17). One of Tillett's attorneys involved in the negotiations "provided Willey with updates on settlement negotiations, marking them as 'attorney/client privileged' or 'confidential.'" (*Id.*). Throughout the negotiations, "Willey provided information, financials, and later testimony, to support Tillett's case against Boldface/Kardashians." (*Id.* ¶ 18).

With settlement discussions stalling, Boldface filed suit in a California federal court seeking a declaratory judgment that Boldface did not infringe the "Kroma" trademark (hereinafter the "California Action"). (*Id.* ¶ 20). Tillett brought counterclaims against Boldface for trademark infringement and third party claims against Kardashian Defendants for vicarious trademark infringement. (Doc. 1, ¶¶ 53–54; 133, ¶ 2). "Neither Kroma EU nor Willey appeared as a party in the California Action."[2] (Doc. 133, ¶ 24). However, Willey gave a Declaration that was used in support of Tillett's motion for a preliminary injunction, and Tillett's principal cited the Kroma mark's "European distribution" in a separate declaration made in support of the motion. (*Id.* ¶¶ 26–28).

On March 11, 2013, the California district court issued a preliminary injunction prohibiting further use of the "Khroma" mark by Boldface. (Doc. 153–31, p. 40) Boldface then changed the name of its product line to "Kardashian Beauty." (Docs. 118, ¶ 23; 118–30).

On March 20, 2013, Willey's U.K. counsel, Brandon Titterington, wrote to Tillett's counsel, admonishing them for failing to take action to protect the Kroma mark in Europe and requesting confirmation of Tillett's intent to share any potential settlement with Kroma EU. (Docs. 132, ¶ 32; 132–32, p. 5). Shortly thereafter, a settlement was reached between Tillett, Boldface, and the Kardashians, and the California Action was dismissed with prejudice. (Doc. 133, ¶ 34). The agreement required Boldface to make a "Settlement Payment" to Tillett and included mutual releases of claims "which were, might or could have been asserted in connection with the [California] Action, the KROMA mark, the KHROMA mark or the KARDASHIAN BEAUTY mark." (*Id.* ¶ 34) (alteration in original). Tillett did not share any of the

---

**2.** Moreover, Willey did not contact Boldace or Defendants to discuss settlement of the California Action. (Doc. 133, ¶ 30).

settlement proceeds with Kroma EU. (Doc. 133, ¶ 36).

Kroma EU filed its Complaint in this action on September 24, 2014. (Doc. 1). On May 7, 2015, Kardashian Defendants filed an Answer and Affirmative Defenses. (Doc. 53). Kardashian Defendants and Kroma EU now move for summary judgment.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is' entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Cafe Int'l (USA), Inc.*, No. 16-17450, 703 Fed.Appx. 814, 817, 2017 WL 3207125, at *2 (11th Cir. July 28, 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" which creates a genuine dispute of material fact. *Crawford–El v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). In determining whether a genuine dispute of material fact exists, the court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. DISCUSSION

Kardashian Defendants' motion requests summary judgment on two grounds: (i) that due to the License Agreement between Kroma EU and Tillett, Kroma EU lacks standing; and (ii) that claim preclusion applies to Kroma EU's remaining claims because Kroma EU was in privity with Tillett with regard to claims brought in the California Action. Plaintiff's motion

requests summary judgment on the issue of liability, alleging that Kardashian Defendants are collaterally estopped—by issue preclusion—from contesting liability.

## A. Defendants' Motion for Summary Judgment

■ The first issue presented by Kardashian Defendants' summary judgment motion is whether a licensee with an exclusive license to use a mark in a territory, but who lacks contractual authority to police the mark, has standing to bring trademark infringement claims arising under the Lanham Act or common law.

■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a cause of action for false association and false advertising. Specifically, § 1125(a) provides that infringers "shall be liable in a civil action by *any person* who believes that he or she is likely to be damaged by such act." (emphasis added). While the "any person" language of the statute envisions expansive liability, a "Lanham Act plaintiff must have rights in the name at issue to seek protection." *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1412 (11th Cir. 1998). Accordingly, consumers generally lack standing to sue under the Lanham Act notwithstanding § 1125(a)'s broad scope. *See; e.g., Lexmark Int'l, Inc. v. Static Control Components, Inc.*, — U.S. —, 134 S.Ct. 1377, 1390, 188 L.Ed.2d 392 (2014) (holding that "a plaintiff must allege an injury to a commercial interest in reputation or sales" to have § 1125(a) standing).

Some non-owners have standing to sue under § 1125(a). *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977). Numerous courts entertaining Lanham Act claims have held certain licensees to possess standing. *See, e.g., Quabaug Rubber Co.*, 567 F.2d at 160; *Sream, Inc. v. LB Smoke Shop, Inc.*, No. 16-CV-24936-PCH, 2017 WL 2735575, at *4 (S.D.

Fla. 2017). Other courts have found licensees to lack standing. *Fin. Inv. Co. v. Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998); *Tr Worldwide Phillyfood, LLC v. Tony Luke, Inc.*, No. 16-1185 (RBK/JS), 2017 WL 396539, at *3–4 (D.N.J. 2017). The line that separates the licensees with standing from the licensees without standing is drawn by the language of the contract—specifically, the nature of the rights the license grants the licensee. *Compare Quabaug Rubber Co.*, 567 F.2d at 157, 160 (holding that a nonexclusive licensee with the contractual "right to enforce the licensed trademark rights against infringers in the United States" had standing to sue under § 1125(a)); *and Sream, Inc.*, 2017 WL 2735575, at *4 (finding that a plaintiff adequately alleged § 1125(a) standing by alleging to be an exclusive licensee possessing "all enforcement rights to obtain injunctive and monetary relief for past and future infringement of ... trademarks"), *with Fin. Inv. Co.*, 165 F.3d at 532 (finding that a licensee lacked § 1125(a) standing where the licensing agreement prohibited such from bringing suit unless the licensor was notified of the alleged infringement and failed to sue first), *and Tr Worldwide*, 2017 WL 396539, at *3–4 (finding that an exclusive licensee plaintiff, without contractual rights to enforce the licensor's intellectual property, lacked § 1125(a) standing).

■ To have § 1125(a) standing, a licensee must have contractual, *in addition to* statutory, standing. A licensee's trademark rights derive from contract, so a "licensee's standing to bring a trademark infringement claim 'largely depends on the rights granted to the licensee in the licensing agreement.'" *Drew Estate Holding Co. v. Fantasia Distrib., Inc.*, 875 F.Supp.2d 1360, 1366 (S.D. Fla. 2012) (quoting *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 8:06-CV-1790-T-27EAJ, 2006 WL

3755328, at *6 (M.D. Fla. 2006)). Even assuming the presence of statutory standing, a licensee lacks standing where the license agreement explicitly allocates responsibility to police a trademark with a licensor. *Fin. Inv. Co.*, 165 F.3d at 532 ("Because the license is the sole source giving the plaintiffs *any* interest in the . . . mark, that same license's refusal to give them the right to sue under these circumstances strips them of the right to raise a § [1125(a) ] claim.").

Kroma EU's standing in this matter thus depends on the rights it received under the License Agreement. The touchstone of contract interpretation is the intent of the parties. *Alliance Metals, Inc. v. Hinely Indus.*, 222 F.3d 895, 901 (11th Cir. 2000); 11 Richard A. Lord, *Williston on Contracts* § 32:2 (4th ed. 2012). Generally, the plain meaning of the contract is the best evidence of the parties' intent. *Alliance Metals*, 222 F.3d at 901; Lord, *supra*, at § 32:2. Contracts are to be read as a whole, and individual provisions should not be interpreted in isolation. *Mastro Plastics Corp. v. Nat'l Labor Relations Bd.*, 350 U.S. 270, 279, 76 S.Ct. 349, 100 L.Ed. 309 (1956); Lord, *supra* § 32:5. Where a contract is ambiguous, courts may review the parties' course of performance in interpreting the contract. Lord, *supra*, § 32:2.

The License Agreement between Tillett and Kroma EU, in a section titled "Renew-al. Protection," committed Tillett to "protect [the Kroma mark] properly from any attempts of illegal use, to the best of his knowledge." (Doc. 118–6, § 4.3.1). The succeeding subsection obliged Kroma EU to "inform [Tillett] of any illegal use of the trademark in the sales Territory, to the best of his knowledge." (*Id.* § 4.3.2).

 Read together, §§ 4.3.1 and 4.3.2 plainly authorized only Tillett to enforce the trademarks governed by the License Agreement.[3] Lord, *supra*, § 32:5. Kroma EU's sole directive was to inform Tillett of instances of infringement. Further, Kroma EU's role as a supportive nonparty in the California Action accords with the conclusion that only Tillett had contractual authority to enforce the Kroma mark. Accordingly, Kroma EU lacks contractual authority, and hence standing, to pursue § 1125(a) violations against infringers in its own capacity.

In its Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff's principal rebuttal to Kardashian Defendants' standing argument is that the License Agreement does not reserve the right to sue to protect the trademark in Tillett. (Doc. 132, p. 4–6). Plaintiff's conclusory assertions fail to provide a satisfactory interpretation of §§ 4.3.1 and 4.3.2 of the License Agreement, whereby Kroma EU had contractual authority to enforce

---

**3.** To the extent the allegation in the Complaint that Kroma EU was an "exclusive licensee" of the Kroma mark has current vitality, the Court finds any such contention incorrect. (Doc. 1, ¶ 69). To qualify as an exclusive licensee, with the attendant standing to enforce a trademark, the license agreement must grant the licensee "all substantial rights" to the trademark. *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F.Supp.2d 1269, 1279–80 (S.D. Fla. 2013). These contractual rights include the "right of exclusivity, the right to transfer and *most importantly the right to sue infringers.*" *Hako–Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 8:06-CV-1790-T-27EAJ, 2006 WL 3755328, at *5 (M.D. Fla. 2006) (emphasis added) (quoting *Biagro W. Sales, Inc. v. Helena Chem. Co.*, 160 F.Supp.2d 1136, 1144 (E.D. Cal. 2001)). Because the License Agreement (i) prohibited Kroma EU from enforcing the Kroma mark, (ii) only gave Kroma EU rights to the trademark in Europe, (iii) prohibited Kroma EU from transferring its contract rights, and (iv) failed to vest independent ownership rights in Kroma EU, the Court finds that Kroma EU was not an exclusive licensee. *See id.*; Doc. 118–6, §§ 1.3, 2.1.1, 4.1.4, 4.3.1, 4.3.2, app. 1 § 1.

the Kroma mark. Moreover, Plaintiff points to no case, and the Court's independent research uncovered none, where a court found that a licensee had standing to pursue a § 1125(a) claim notwithstanding a licensing agreement allocating enforcement responsibility with a licensor.

Since this Court finds that the License Agreement deprives Kroma EU of standing, Kardashian Defendants are entitled to summary judgment on the claims brought under the Lanham Act, *see supra*, and the Florida common law. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1218 (S.D.Fla. 2004) ("The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act." (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003))).

Kardashian Defendants also move for summary judgment on the ground that Plaintiff's claims are barred by res judicata. Because Plaintiff lacks standing, the Court does not reach the issue.

## B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff also moves for partial summary judgment on the issue of liability. (Doc. 153). Because the Court finds that Plaintiff lacks standing to bring the infringement claims asserted in this matter, the Court denies Plaintiff's Motion for Partial Summary Judgment.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian's, Motion for Summary Judgment (Doc. 118) is **GRANTED.** Kardashian Defendants are entitled to summary judgment on Plaintiff's Complaint.

2. The Clerk of Court is **DIRECTED** to enter the following Judgment:

 Judgment is entered in favor of Defendants, Kim Kardashian, Kourtney Kardashian, and Khloe Kardashian, and against Plaintiff, Kroma Makeup EU, LLC. Plaintiff shall take nothing from Defendants.

3. Plaintiff's Motion for Partial Summary Judgment (Liability Only) (Doc. 153) is **DENIED AS MOOT.**

4. The Clerk of Court is **DIRECTED** to terminate all other pending motions (Doc. 120) and to close the file.

**DONE AND ORDERED** in Orlando, Florida on August 24, 2017.